UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WELENCO, INC., a California corporation, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GARY W. CORBELL, et al.,<br><br>Defendants. | Civ. No.  S-13-0287 KJM CKD<br><br><u>ORDER</u> |

Defendant Gary Corbell has filed a motion to dismiss one of plaintiffs' causes of action for failure to state a claim and to dismiss or transfer the remaining causes of action for improper venue; defendants Craig Corbell and Boredata have joined the motion. ECF Nos. 26 & 28. Plaintiffs have opposed the motion and defendant Gary Corbell has filed a reply. The court ordered the motion submitted on the pleadings and now DENIES the motion in part and GRANTS it in part.

I.  BACKGROUND

On February 14, 2013, Welenco, Inc. and Water Well Technology, Inc. ("WWT") (collectively "plaintiffs") filed a complaint against defendants Gary Corbell, Craig Corbell, Mark Sharpless ("Sharpless") and Boredata, alleging violations of the Lanham Act and several California statutes.  ECF No. 2.

1

1          On March 27, 2013, Craig Corbell and Boredata filed an answer and asserted a
2  counterclaim against Welenco.  ECF No. 10.  On March 28, 2013, Sharpless filed an answer and
3  asserted a counterclaim.  ECF No. 11.

4          Gary Corbell filed a motion to dismiss on April 29, 2013.  ECF No. 12.

5          On May 20, 2013, plaintiffs answered Craig Corbell's and Sharpless's
6  counterclaims.  ECF No. 14, 15.

7          On July 24, 2013, the court granted the parties' stipulation to permit plaintiffs to
8  file a First Amended Complaint ("FAC").  ECF No. 22.  Plaintiffs filed the First Amended
9  Complaint the same day, and the court denied defendants' motion to dismiss as moot.  ECF Nos.
10 23, 25.  The First Amended Complaint identifies Doe defendants.[1]

11         Gary Corbell filed the instant motion to dismiss on August 14, 2013.  ECF No. 26.
12 Craig Corbell and Boredata joined the motion on the same day.  ECF No. 28.

## II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT[2]

14         In 1997, Gary Corbell and his wife Constance purchased Welenco, a company
15 involved in water-well repair and geophysical logging of wells ("geo-logging").  ¶¶ 11, 16.
16 Geo-logging is a method of making a record, or well log, of the geologic formations penetrated
17 by a borehole.  ¶ 12.  The information generated is used in the design of wells.  ¶ 12.  There are
18 /////

---

[1] The Ninth Circuit provides that "'[plaintiffs] should be given an opportunity through discovery to identify [] unknown defendants'" "in circumstances . . . 'where the identity of the alleged defendant[] [is] not [] known prior to the filing of a complaint.'"  *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)) (modifications in the original). Plaintiff is warned, however, that such defendants will be dismissed where "'it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" Id. (quoting *Gillespie*, 629 F.2d at 642). Plaintiff is further warned that Federal Rule of Civil Procedure 4(m), which states that the court must dismiss defendants who have not been served within 120 days after the filing of the complaint unless plaintiff shows good cause, is applicable to doe defendants. See *Glass v. Fields*, No. 1:09-cv-00098-OWW-SMS PC, 2011 U.S. Dist. LEXIS 97604 (E.D. Cal. Aug. 31, 2011); *Hard Drive Prods. v. Does*, No. C 11-01567 LB, 2011 U.S. Dist. LEXIS 109837, at *2-4 (N.D. Cal. Sep. 27, 2011).

[2] References in this section are to the First Amended Complaint, ECF No. 23.

1   not many geo-logging companies in California because of the expense of equipping a geo-logging
2   van and the difficulty in finding skilled technicians.  ¶ 13.

3   Robert Guardino, a well-repairman, owns WWT.  In 2007, WWT purchased
4   Welenco, and Guardino became Welenco's president and CEO.  ¶ 19.  The details of the purchase
5   were memorialized in a purchase agreement, which included a covenant prohibiting Gary Corbell
6   from competing in the geo-logging business against Welenco and a requirement that Welenco
7   employ Gary Corbell's son Craig as management head of Welenco's geo-logging division.
8   ¶¶ 19-20.  When the note came due in 2010, Corbell agreed to extend it, conditioning the
9   extension on higher monthly payments and changes in Craig Corbell's job duties.  ¶ 22.  Gary
10  Corbell also agreed to an extension of the covenant not to compete.  ¶ 23.

11  Welenco operates not only in the Sacramento area, but also in Southern California,
12  Arizona and Nevada, employing Craig Corbell, Sharpless, Oz Trad and Dan Ihde as technicians.
13  ¶ 21.  It operates several geo-logging vans, designed according to plans and CAD drawings kept
14  in a password protected and access-limited environment.  ¶¶ 14-15.  Welenco has secured
15  copyright protection for many of its designs relating to van components and assemblies.  ¶ 15.

16  Shortly after Gary Corbell extended the note, Welenco noticed that the revenues
17  from its southern territory began to drop.  ¶ 23.  Welenco became aware of a company called
18  Tri-State Geo-Physical Surveys, LLC ("Tri-State"), operating out of San Bernardino, California.
19  Welenco alleges on information and belief that Tri-State is a front for Greg Corbell, Craig Corbell
20  and Boredata.  ¶¶ 25, 42.

21  In April 2011, Craig Corbell created a Dropbox folder on his Welenco laptop and
22  labeled it "Boredata."  ¶ 30.  In August 2011, Craig Corbell loaded a customer list from Pacific
23  Surveys, one of Welenco's competitors, into the Boredata folder.  Around that time, Tri-State sent
24  emails to customers of Pacific Surveys.  ¶ 26.  Trad had worked for Pacific Surveys before
25  coming to Welenco in 2010.  *Id*.  He left Welenco on bad terms in July 2012.  ¶ 36.

26  In September 2011, Guardino explored selling Welenco's geo-logging division to
27  a company in Colorado.  ¶ 27.  Craig Corbell called Michael Ridder of Pacific Surveys,
28  complaining about the potential sale.  ¶ 28.  Craig Corbell said that the Corbells would get

1   Welenco back; he also said he had a geo-logging van and would do jobs for $500, undercutting
2   both Pacific Surveys and Welenco. *Id.*
3       In November 2011, Craig Corbell downloaded many of Welenco's proprietary
4   files, including designs and drawings subject to copyright protection, as well as Welenco's
5   customer lists, revenue history and other proprietary information. ¶ 31.
6       At some point, Craig Corbell put the Welenco cell phone into his own name. ¶ 39.
7   When Guardino objected, Craig Corbell purchased a cell phone and had calls to the Welenco
8   number forwarded to his personal phone. He also put this phone number on Welenco estimates,
9   contracts and business correspondence. ¶ 39. Craig Corbell now uses this phone number for
10  Boredata. ¶ 39.
11      Craig Corbell left Welenco in June 2012. Welenco undertook a forensic
12  examination of his laptop and learned that Craig Corbell had changed the normal Welenco
13  passwords and had installed file shredding software. ¶ 32.
14      In early 2012, a customer called Welenco, apologized for not having a check at the
15  jobsite the previous day, and asked the person answering the phone to tell Craig Corbell that the
16  check was in the mail. ¶ 40. Welenco logs did not reflect a job for that day and the GPS on Craig
17  Corbell's Welenco van had been disabled the day of this alleged job. *Id.* Welenco never received
18  this check. *Id.*
19      Craig Corbell and Gary Corbell then supplied Sharpless with a geo-logging van to
20  compete with Welenco in the Northern California market. ¶ 33. A Welenco employee inspected
21  Sharpless's van and determined it was set up exactly like a Welenco van. ¶ 34. On information
22  and belief, Craig Corbell used Welenco's confidential information to build Sharpless's van and
23  has otherwise made copies of Welenco's protected design plans and CAD drawings. *Id.* While
24  still working for Welenco, Sharpless told another Welenco employee that he was going to start
25  his own business and had six customers already lined up. ¶ 37.
26      When Sharpless left Welenco, he turned in his Welenco cell phone; when Welenco
27  several weeks later dialed the number that had been assigned to the phone, Sharpless answered as
28  /////

"West Coast Logging," suggesting that Sharpless had taken the SIM card from the Welenco phone. ¶ 41.

Plaintiffs bring eleven claims for relief:  (1) a violation of the Computer Fraud and Abuse Act of 1986, 18 U.S.C. §1030, against all defendants; (2) computer trespass and violation of California Penal Code § 502 against Craig Corbell and Sharpless; (3) copyright infringement against all defendants; (4)  use of a false designation of origin, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), by Welenco against all defendants; (5)  false advertising in violation of the Lanham Act, by Welenco against all defendants; (6) trespass to chattels against Craig Corbell and Sharpless; (7) a violation of California Business and Professions Code § 17200 by WWT against all defendants; (8) misappropriation of trade secrets in violation of California Civil Code § 3426.1(b) by Welenco against all defendants; (9) breach of written contract by Welenco against Craig Corbell; (10) breach of written contract against Gary Corbell; and (11) declaratory relief against Gary Corbell.

III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

   A.  Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

5

for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

B. Analysis

Gary Corbell alleges that the First Amended Complaint's claim of copyright infringement "contains nothing more than conclusions" and the general allegations of the First Amended Complaint say only that Craig Corbell, not Gary Corbell, downloaded the proprietary CAD drawings and design details. ECF No. 26 at 12. Although Craig Corbell and Boredata have joined Gary Corbell's motion, they have provided no additional analysis or argument nor explained how they can benefit from a claim that Gary Corbell is not sufficiently connected to Craig Corbell's alleged infringing activities.

Gary Corbell's claim that the elements of copyright infringement are conclusorily pleaded is conclusorily argued: he cites the two elements of a claim of copyright infringement and then says only that the First Amended Complaint does not include any facts establishing such

1   a claim. ECF No. 26 at 12. An argument made in such an abbreviated fashion is waived. *See*

2   *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) (finding that an argument made in two

3   sentences without citation to authority was waived).

4           Gary Corbell does argue in a slightly more comprehensive fashion that the First

5   Amended Complaint does not link him to any infringing activities, suggesting that the First

6   Amended Complaint identifies only Craig Corbell as the one who downloaded the proprietary

7   materials. *Id*. Plaintiffs counter they have adequately alleged Gary Corbell's liability as a

8   vicarious or contributory infringer.

9           "Traditionally, 'one who, with knowledge of the infringing activity, induces,

10   causes or materially contributes to the infringing conduct of another may be held liable as a

11   "contributory" infringer.'" *A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1019 (9th Cir.

12   2001) (quoting *Gershwin Publ'g Corp. v. Columbia Artist Mgmt., Inc*., 443 F.2d 1159, 1162 (2d

13   Cir. 1971)). One who "'encourages or assists the infringement,'" may be liable even if he did not

14   copy the work himself. *Id*. (quoting *Matthew Bender & Co. v. West Publ'g Co*., 158 F.3d 693 (2d

15   Cir. 1998)). Plaintiffs have alleged that Craig Corbell, Greg Corbell and Boredata have used Tri-

16   State as a front, as suggested by Tri-State's claim to have been in the geo-logging business since

17   1997, which is when Gary Corbell claims to have started in the geo-logging business. FAC

18   ¶¶ 24-25. They also allege that Gary Corbell and Craig Corbell provided Sharpless with a

19   geo-logging van, which appears to incorporate plaintiffs' proprietary information and technology

20   that Craig Corbell downloaded. *Id*. ¶¶ 33-34. Moreover, when Guardino sent a cease-and-desist

21   letter to Craig Corbell, Gary Corbell responded saying, among other things, that if plaintiffs won

22   the instant lawsuit, Craig Corbell would declare bankruptcy, and Gary Corbell would repossess

23   Boredata's equipment and hire someone to operate the vans under a different name. *Id*. ¶¶ 47-48.

24   This adds sufficient factual support to plaintiffs' claims that Gary Corbell was working in concert

25   with Craig Corbell and Boredata and encouraged Craig Corbell's infringing activity. This claim is

26   sufficiently pleaded.

27   /////

28   /////

1    IV. MOTION TO DISMISS FOR IMPROPER VENUE

2        A. Standard

3        A motion to enforce a forum selection clause is treated as a motion to dismiss under Rule 12(b)(3) of the Federal Rules of Civil Procedure. *Doe 1 v. AOL LLC,* 552 F.3d 1077, 1081 (9th Cir. 2009). This court need not accept the pleadings as true, but must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137-38 (9th Cir. 2004). The court is not restricted to the complaint and its attachments in resolving the motion, but may consider matters outside the pleadings in resolving a motion under Rule 12(b)(3). *Petersen v. Boeing Co.*, 715 F.3d 276, 279 (9th Cir. 2013).

        B. Additional Facts

        Gary Corbell has submitted copies of the documents governing the sale of Welenco to WWT. The first is a Stock Purchase and Sale Agreement between Gary Corbell and Constance Corbell and the Gary and Constance Corbell Trust, on the one hand, and Water Well Technology on the other. The Agreement includes a paragraph requiring Welenco to enter into an employment contract with Craig Corbell. ECF No. 12-2 at 5 ¶¶ 1.7, 1.8. The employment contract is not attached. The second document is a secured promissory note; the third is a guaranty agreement; the fourth is a stock pledge agreement; the fifth is a security agreement; and the sixth is a covenant not to compete. Each of these documents includes the following paragraph:

> Governing Law; Venue. This Agreement [or covenant] shall be construed, enforced, governed by interpreted and performed pursuant to the internal laws, and not the law of conflicts of the State of California applicable to agreements, contracts and understandings made and to be performed in such state. The parties also agree that this Agreement is made and to be performed in Kern County, California, and therefore that the only proper venue for any litigation shall be the Kern County Superior Court, Metropolitan Division.

*See, e.g.,* ECF No. 12-2 at 22 ¶ 8.15. The parties refer to the paragraph as a forum selection clause, even though it might more appropriately be described as a venue selection clause. However it is characterized does not affect this court's analysis.

C.   Analysis

1. Interpretation of the Clause in this Case

Federal law governs interpretation of a forum selection clause in a federal question case, even when there is supplemental jurisdiction over state law claims. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991); *Doe 1*, 552 F.3d at 1081 (applying federal law to interpret forum selection clause when jurisdiction was based on federal question and diversity); *Sheasly v. Orr Felt Co.*, No. CV 10-956 PK, 2010 WL 4273230, at *2 (D. Or. Oct. 25, 2010) (applying federal law when there was federal question jurisdiction and supplemental jurisdiction over state law claims), *aff'd*, 2010 WL 4961807 (D. Or. Dec. 1, 2010).[3] *See also In re Bank of New York Mellon Corp. False Claims Act Foreign Exch. Litig.*, 815 F. Supp. 2d 1190, 1203 (N.D. Cal. 2102) (federal law applies to the interpretation of a clause that fixes venue in a certain California county). In *Manetti-Farrow, Inc. v. Gucci America, Inc.*, a diversity case, the Ninth Circuit said that "because enforcement of a forum selection clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to the interpretation of forum selection clauses." 858 F.2d 509, 513 (9th Cir. 1988).

/////
/////
/////
/////
/////
/////
/////

---

[3] The courts acknowledges that some other courts have embraced the position taken in the treatise on Federal Practice and Procedure: "'[a] federal court sitting in diversity or federal question jurisdiction should take . . . [a forum selection] clause into account only as one element in the balancing test required by Section 1404.'" *Trafalgar Capital Specialized Inv. Fund (In Liquidation)*, 878 F. Supp.2d 1274, 1285 (S.D. Fla. 2012) (quoting Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 3803.1 (3d ed. 2007)) (brackets in original); *see also Infinity Air, Inc. v. Echo Global Logistics, Inc.*, No. 3:13-cv-00307-MO, 2013 WL 3199657, at *3-4 (D. Or. June 20, 2013) (agreeing with Wright and Miller, but not adopting their analysis in light of Ninth Circuit authority).

In applying federal law to interpret a contract, a court relies on familiar principles:

> Contract terms are to be given their ordinary meaning, and when the terms of the contract are clear, the intent of the parties should be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first. . . . We apply the primary rule of interpretation . . . that the common or normal meaning of language will be given to the words of the contract unless circumstances show that in a particular case a special meaning should be attached to it. We read a written contract as a whole, and interpret each part with reference to the whole.

*Doe I*, 552 F.3d at 1081; *accord Sheasly*, 2010 WL 4273230, at *3-4.

Gary Corbell does not argue that the clause here governs the copyright claim, but argues that it covers the other claims in the First Amended Complaint asserting in conclusory fashion that "the conduct underlying each cause of action is also the basis of the Breach of Contract Cause of Action, and analysis of that cause of action necessarily considers the same nucleus of facts underlying the asserted tort causes of action." ECF No. 26 at 16. He also argues that he has filed suit arising out of the agreements in Kern County Superior Court and that the forum selection clause requires that plaintiffs' claims "be litigated alongside the pending Kern County Superior Court action." ECF No. 26 at 14.[4]

Plaintiffs argue that the copyright claim cannot be subject to the forum selection clause, as such claims must be brought exclusively in federal court. They also argue that their first, fourth, fifth, seventh and eighth claims for relief do not require interpretation of the underlying agreements and so also are not subject to the forum selection clause. ECF No. 32 at 8. They do not address the second claim for computer trespass and the sixth claim for trespass to chattels, brought against Craig Corbell and Sharpless only, or the ninth claim for relief brought against Craig Corbell only. As Craig Corbell has not provided anything apart from his paragraph-long joinder in Greg Corbell's motion, the court finds any argument that these causes of action arise from the contract is waived.

---

[4] As an exhibit to the reply, Gary Corbell has provided a copy of the state court complaint, which was filed on July 29, 2013, after the instant case, and which contains causes of action for foreclosure of the deed of trust, claim and delivery, and breach of written contract. ECF No. 33-1 at 2-10.

1          In reply, Gary Corbell does address the individual claims plaintiffs have identified
2   as outside the forum selection clause, providing only brief argument that they are governed by the
3   provision. ECF No. 32 at 5-6.
4          The Ninth Circuit and courts in this circuit have recognized that the scope of a
5   forum or venue selection clause is not necessarily limited to contract claims. *Manetti-Farrow,*
6   *Inc.*, 858 F.2d at 514 (claims of tortious interference with prospective economic relations covered
7   by forum selection clause); *Perry v. AT&T Mobility LLC*, No. C-01488 SI, 2011 WL 4080625, at
8   *3-4 (N.D. Cal. Sep 12, 2011) (recognizing that forum selection clause can cover tort or statutory
9   claims); *Sheasly*, 2010 WL 4273230, at *5 (finding ERISA and disability claims controlled by
10  forum selection clause that covered suits "connected with" employment contract because the
11  claims were premised on the termination of a relationship governed by the contract).
12         In *Manetti-Farrow,* the plaintiff had entered into an exclusive dealership contract
13  with Gucci, which contained a forum selection clause establishing Florence, Italy as the forum for
14  any litigation "regarding interpretation or fulfillment" of the contract. *Id.* at 510. When Gucci
15  terminated the dealership, plaintiff filed suit in the Northern District of California against Gucci
16  and several members of the Gucci family, alleging conspiracy to interfere with contractual
17  relations, conspiracy to interfere with prospective economic advantage, tortious interference with
18  contract, tortious interference with prospective economic advantage, violation of the covenant of
19  good faith and fair dealing, and unfair trade practices. *Id.* at 511. The court said that "[w]hether a
20  forum selection clause applies to tort claims depends on whether resolution of the claims relates
21  to interpretation of the contract," and found that because Manetti-Farrow's claims involved "the
22  central conflict over interpretation of the contract," they were governed by the forum selection
23  clause. *Id.* at 514 (internal citation & quotation marks omitted).
24         The forum selection clause in this case is different than the one at issue in *Manetti-*
25  *Farrow*: it sets out the parties' agreement that the contracts were made and were to be performed
26  in Kern County and therefore Kern County was the proper venue for litigation. "Therefore"
27  means "for that reason; consequently," COMPACT OXFORD ENGLISH DICTIONARY at 1075 (3d ed.
28  2005), or "for that reason; on that ground or grounds." BLACK'S LAW DICTIONARY at 1487 (7th

ed. 1999). Accordingly, the use of the term "therefore" renders this clause sufficiently similar to that in *Manetti-Farrow* such that its analysis applies to this case. *But see Bagdasarian Prod. LLC v. Twentieth Century Fox Film Corp.*, No. 2:10-cv-02991-JHN-JCGx, 2010 WL 5154136, at *3 (C.D. Cal. Aug. 12, 2010), *appeal dismissed*, 673 F.3d 1267 (9th Cir. 2012) (saying that the *Manetti-Farrow* test is not limited to the clause at issue in that case).

Defendant Gary Corbell has not shown, however, that the forum selection clause applies to the claims against him apart from those plaintiffs concede are subject to the clause. First, although Gary Corbell argues broadly that all the claims either arise out of the contracts or require interpretation of the contracts, he does not tie any of plaintiffs' claims to a particular contract out of the six involved in the sale of Welenco to WWT, or point to a particular provision in any of the contracts at issue. His generalities are insufficient for him to prevail on this point. *See Sims v. Paramount Gold & Silver Corp.*, No. CV 10-356-PHX-MHM, 2010 WL 5364783, at *7 (D. Ariz. Dec. 21, 2010) (stating that "a defendant should not be able to defeat a plaintiff's otherwise legitimate choice of venue merely by alleging that the plaintiff's non-contractual claims require interpretation of the contract"). Moreover even if the court considers the contracts generally, it does not find Gary Corbell's arguments persuasive. The complaint alleges that Gary Corbell conspired and acted in concert with Craig Corbell and Sharpless; it was the latter two who allegedly improperly accessed Welenco's computer system, used Welenco's commercial identity, and misappropriated Welenco's trade secrets. Moreover, the complaint alleges that these acts—the misappropriation of Welenco's trade secrets, computer trespass, and impersonation of Welenco—constitute unfair business practices. These claims arise from the relationship between Craig Corbell and Sharpless with Welenco, not from the relationship between Welenco and Gary Corbell. Gary Corbell has presented nothing suggesting that the forum selection clause covers these claims.

2. Enforcement of the Clause

In *M/S Bremen v. Zapata Off-Shore Co.*, the U.S. Supreme Court held that contractual forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."

407 U.S. 1, 10 (1972).  Although the *M/S Bremen* was an admiralty case involving international commerce, the Ninth Circuit has applied it in "the domestic context," *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 279 (9th Cir. 1984); *see also In re Bank of New York Mellon Corp. False Claims Act Foreign Exch. Litig.*, 851 F. Supp.2d at 1203 (applying *M/S Bremen* to a venue selection clause).  The Ninth Circuit has said that enforcement of such a clause would be unreasonable under *M/S Bremen* upon "a showing of fraud, undue influence, overweening bargaining power, or such serious inconvenience in litigating in the selected forum as to deprive the party seeking enforcement of a meaningful day in court."  *Spradlin*, 926 F.2d at 868; *see also Murphy,* 362 F.3d at 1140 (internal citation & quotation marks omitted) (stating that under *Bremen* a court would not enforce a forum selection clause "if enforcement would contravene a strong public policy of the forum in which the suit is brought.").

Plaintiffs  argue that enforcement of the forum selection clause compelling litigation in Kern County Superior Court would be unreasonable because federal courts have exclusive jurisdiction over the copyright claim and the other claims are properly within this court's pendant jurisdiction.  They rely on *Lizalde v. Advanced Planning Servs., Inc.,* 875 F. Supp. 2d 1150 (S.D. Cal. 2012), in which the court declined to enforce a forum selection clause requiring litigation to be brought in San Diego Superior Court when the federal case included a copyright claim and the pendant state claims, arguably subject to the forum selection clause, were closely related to the copyright claim.  The court observed that enforcing the clause would require plaintiffs to file "duplicate lawsuits on the same facts in two different forums."  *Id*. at 1158.

In this case, most of plaintiffs' claims are not governed by the forum selection clauses because they are not dependent on the terms of the contracts but rather on alleged acts outside the relationship between Gary Corbell and the plaintiffs.  Plaintiffs would thus not be required to undertake parallel litigation.  The breach of contract and declaratory relief claims are not so closely related to the copyright claim, or the other claims clearly not subject to the forum selection clause, as to render enforcement of the clause unreasonable as to them:  they focus on the alleged competition rather than on the manner in which Gary Corbell secured the means and

1  tools to compete.  Enforcement of the clause as to the tenth and eleventh claims is not

2  unreasonable.

3  V.  MOTION TO TRANSFER TO THE FRESNO DIVISION OF THIS COURT

4  Gary Corbell argues that to the extent not all the claims are dismissed, the

5  remainder should be transferred to the Fresno Division of this court.  He cites to the allegations of

6  the complaint showing that only Sharpless lives in Sacramento, while the remaining three

7  defendants live in Bakersfield and that plaintiffs have offices in Sacramento and Kern counties.

8  He does not discuss whether the case arises in one of the counties covered by the Fresno Division.

9  He then concludes, without a greater showing, that "it is plainly in furtherance of the convenience

10  of the parties and witnesses, as well as in the interests of justice" to transfer the case to the Fresno

11  Division.  ECF No. 26 at 17.

12  Plaintiffs counter that Gary Corbell's conclusory analysis, unsupported by any

13  evidence other than the First Amended Complaint, is insufficient to disturb plaintiffs' choice of

14  forum.  ECF No. 32 at 13-14.

15  In reply, Gary Corbell submits the declaration of Craig Corbell and some exhibits

16  in support of his argument that litigation in the Fresno division will be more convenient.

17  Gary Corbell does not claim venue is inappropriate in this division, but does not

18  address whether it would be proper in the Fresno division under Local Rule 120(d), which,

19  establishes intradistrict venue based on where the action arises.  Moreover, assuming an analysis

20  of hardship is appropriate to an intradistrict venue question, this court declines to consider his

21  new evidentiary material submitted only with the reply.  *See, e.g., Zamani v. Carnes,* 491 F.3d

22  990, 997 (9th Cir. 2007) (court need not consider arguments raised for the first time in a reply

23  brief); *Coleman v. Brown*, __ F. Supp. 2d __, 2013 WL 1397335, at *24 n.35 (E.D. Cal. Apr. 5,

24  2013) (stating that "the time and place" for a movant to submit evidence in support of the motion

25  is with the motion, not the reply); *USF Ins. Co. v. Smith's Food and Drug Ctr.*, 921 F. Supp. 2d

26  n.1 (D. Nev. 2013), *reconsideration denied*, 2013 WL 4458776 (D. Nev. Aug. 16, 2013)

27  (declining to consider new evidence movant "improperly introduced" with a reply); *Contratto v.*

28  *Ethicon, Inc.*, 227 F.R.D. 304, 309 n.5 (N.D. Cal. 2005) (movants' attempt to introduce new

14

evidence in connection with their reply papers is improper).  Without the new material, there is no support for the claim that litigating in Fresno will be more convenient.

    IT IS THEREFORE ORDERED that:

    1.  Defendant's motion to dismiss or transfer is GRANTED IN PART, in that claims ten and eleven of the First Amended Complaint are dismissed; and

    2.  The motion is DENIED in all other respects.

DATED:  September 25, 2013.

           _____
           UNITED STATES DISTRICT JUDGE