1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    WELENCO, INC., a California              Civ. No.  S-13-0287 KJM CKD
      corporation, et al.,
12
                      Plaintiffs,
13                                             ORDER
              v.
14
      GARY W. CORBELL, et al.,
15
                      Defendants.
16

17

18              Defendants Craig G. Corbell and Boredata, Inc. ("defendants") filed the present

19    motion to transfer venue to the United States District Court for the Eastern District of California,

20    Fresno Division.[1]  ECF No. 37.  Plaintiffs have opposed the motion and defendants filed a reply.

21    _____

22    [1]   Defendants move for an intra-district change of venue to the "Eastern District of California,
      County of Kern."  (ECF 37 at 2.)  It is unclear whether defendants are seeking to transfer the case
23    to the Bakersfield courthouse of the Fresno Division.  Plaintiffs interpret the motion as a change
      of venue to the Fresno Division.  (ECF 40 at 2.)  Defendants do not address the issue in reply.
24    (ECF 43.)  This court will likewise interpret the motion as a request to transfer venue to the
      Fresno Division as the Bakersfield courthouse is simply one outpost of the Fresno Division,
25    without an assigned district judge.  Local Rule 120(a) (describing the Sacramento and Fresno
      divisions of the Eastern District of California).  Because defendants rely on 28 U.S.C. § 1404,
26    rather than on the doctrine of *forum non conveniens* as the basis of their motion, the court deems
      this a motion for intra-district venue rather than one for transfer to Kern County Superior Court.
27    *Atl. Marine Constr. Co. v. U. S Dist. Court.*, 134 S. Ct. 568, 580 (2013) (stating that §1404(a) has
      no application when a party seeks transfer to a non-federal forum).
28
                                              1

1   Thereafter the court requested supplemental briefing on the question whether this motion was in

2   essence a motion for reconsideration or was barred by the law-of-the-case doctrine.  This matter

3   was decided without hearing.  For the following reasons, the court DENIES the motion.

4   I.       BACKGROUND

5              On February 14, 2013, Welenco, Inc. and Water Well Technology, Inc.  ("WWT")

6   (collectively "plaintiffs") filed a complaint against defendants Gary Corbell, Craig Corbell, Mark

7   Sharpless ("Sharpless") and Boredata, alleging violations of the Lanham Act and several

8   California statutes.  ECF No. 2.

9              On March 27, 2013, Craig Corbell and Boredata filed an answer and asserted a

10   counterclaim against Welenco.  ECF No. 10.  On March 28, 2013, Sharpless filed an answer and

11   asserted a counterclaim.  ECF No. 11.

12             Gary Corbell filed a motion to dismiss on April 29, 2013.  ECF No. 12.

13             On May 20, 2013, plaintiffs answered Craig Corbell's and Sharpless's

14   counterclaims.   ECF Nos. 14, 15.

15             On July 24, 2013, the court granted the parties' stipulation to permit plaintiffs to

16   file a First Amended Complaint ("FAC").  ECF No. 22.  Plaintiffs filed the First Amended

17   Complaint the same day, and the court denied defendants' motion to dismiss as moot.  ECF

18   Nos. 23, 25.

19             On August 14, 2013, Gary Corbell filed a filed a motion to dismiss one of

20   plaintiffs' causes of action for failure to state a claim and to dismiss or transfer the remaining

21   causes of action for improper venue.  ECF No. 26.  Craig Corbell and Boredata joined the same

22   day, saying "[a]lthough no additional argument is presented herein, Craig G. Corbell and

23   Boredata Inc. reserve their right to participate in the motion including the right to reply to any

24   opposition filed to the motion."  ECF No. 28.  Craig Corbell and Boredata did not file a reply,

25   but it was Craig Corbell's declaration that Gary Corbell supplied with his reply, a declaration the

26   court declined to consider.  ECF No. 35 at 14.

27   /////

28   /////

2

1      Ultimately this court granted Gary Corbell's motion in part, dismissing two claims

2  specific to defendant Gary Corbell, but denied the motion in all other respects.  ECF No. 35.

3      Craig Corbell and Boredata filed the instant motion to transfer venue on November

4  6, 2013.  ECF No. 37.   It is supported by the same declaration and exhibits that Gary Corbell

5  submitted in connection with his earlier reply. Plaintiffs filed their opposition on November 22,

6  2013.  ECF No. 40.  On November 29, defendants Craig Corbell and Boredata filed a reply,

7  supported by a second declaration from Craig Corbell.  ECF No. 43.   Both parties filed

8  supplemental briefing on December 16, 2013, addressing the court's inquiry whether the current

9  motion should be resolved by the law of the case doctrine.

10  II.      ALLEGATIONS OF THE FIRST AMENDED COMPLAINT[2]

11      In 1997, Gary Corbell and his wife Constance purchased Welenco, a company

12  involved in water-well repair and geophysical logging of wells ("geo-logging").  ¶¶ 11, 16.

13  Geo-logging is a method of making a record, or well log, of the geologic formations penetrated

14  by a borehole.  ¶ 12.  The information generated is used in the design of wells.  ¶ 12.  There are

15  not many geo-logging companies in California because of the expense of equipping a geo-logging

16  van and the difficulty in finding skilled technicians.  ¶ 13.

17      Robert Guardino, a well-repairman, owns WWT.  In 2007, WWT purchased

18  Welenco, and Guardino became Welenco's president and CEO.  ¶ 19.  The details of the purchase

19  were memorialized in a purchase agreement, which included a covenant prohibiting Gary Corbell

20  from competing in the geo-logging business against Welenco and a requirement that Welenco

21  employ Gary Corbell's son Craig as management head of Welenco's geo-logging division.

22  ¶¶ 19-20.  When the note came due in 2010, Corbell agreed to extend it, conditioning the

23  extension on higher monthly payments and changes in Craig Corbell's job duties.  ¶ 22.  Gary

24  Corbell also agreed to an extension of the covenant not to compete.  ¶ 23.

25      Welenco operates not only in the Sacramento area, but also in Southern California,

26  Arizona and Nevada, employing Craig Corbell, Sharpless, Oz Trad and Dan Ihde as technicians.

27

28  [2]   References in this section are to the First Amended Complaint, ECF No. 23.

3

1   ¶ 21.  It operates several geo-logging vans, designed according to plans and CAD drawings kept

2   in a password protected and access-limited environment.  ¶¶ 14-15.  Welenco has secured

3   copyright protection for many of its designs relating to van components and assemblies.  ¶ 15.

4          Shortly after Gary Corbell extended the note, Welenco noticed that the revenues

5   from its southern territory began to drop.  ¶ 23.  Welenco became aware of a company called

6   Tri-State Geo-Physical Surveys, LLC ("Tri-State"), operating out of San Bernardino, California.

7   Welenco alleges on information and belief that Tri-State is a front for Greg Corbell, Craig Corbell

8   and Boredata.  ¶¶ 25, 42.

9          In April 2011, Craig Corbell created a Dropbox folder on his Welenco laptop and

10  labeled it "Boredata."  ¶ 30.  In August 2011, Craig Corbell loaded a customer list from Pacific

11  Surveys, one of Welenco's competitors, into the Boredata folder.  Around that time, Tri-State sent

12  emails to customers of Pacific Surveys.  ¶ 26.  Trad had worked for Pacific Surveys before

13  coming to Welenco in 2010.  *Id.*  He left Welenco on bad terms in July 2012.  ¶ 36.

14         In September 2011, Guardino explored selling Welenco's geo-logging division to

15  a company in Colorado.  ¶ 27.  Craig Corbell called Michael Ridder of Pacific Surveys,

16  complaining about the potential sale.  ¶ 28.  Craig Corbell said that the Corbells would get

17  Welenco back; he also said he had a geo-logging van and would do jobs for $500, undercutting

18  both Pacific Surveys and Welenco.  *Id.*

19         In November 2011, Craig Corbell downloaded many of Welenco's proprietary

20  files, including designs and drawings subject to copyright protection, as well as Welenco's

21  customer lists, revenue history and other proprietary information.  ¶ 31.

22         At some point, Craig Corbell put the Welenco cell phone into his own name.  ¶ 39.

23  When Guardino objected, Craig Corbell purchased a cell phone and had calls to the Welenco

24  number forwarded to his personal phone.  He also put this phone number on Welenco estimates,

25  contracts and business correspondence.  ¶ 39.  Craig Corbell now uses this phone number for

26  Boredata.  ¶ 39.

27  /////

28  /////

4

Craig Corbell left Welenco in June 2012.  Welenco undertook a forensic examination of his laptop and learned that Craig Corbell had changed the normal Welenco passwords and had installed file shredding software.  ¶ 32.

In early 2012, a customer called Welenco, apologized for not having a check at the jobsite the previous day, and asked the person answering the phone to tell Craig Corbell that the check was in the mail.  ¶ 40.  Welenco logs did not reflect a job for that day and the GPS on Craig Corbell's Welenco van had been disabled the day of this alleged job.  *Id*.  Welenco never received this check.  *Id*.

Craig Corbell and Gary Corbell then supplied Sharpless with a geo-logging van to compete with Welenco in the Northern California market.  ¶ 33.  A Welenco employee inspected Sharpless's van and determined it was set up exactly like a Welenco van.  ¶ 34.  On information and belief, Craig Corbell used Welenco's confidential information to build Sharpless's van and has otherwise made copies of Welenco's protected design plans and CAD drawings.  *Id*.  While still working for Welenco, Sharpless told another Welenco employee that he was going to start his own business and had six customers already lined up.  ¶ 37.

When Sharpless left Welenco, he turned in his Welenco cell phone; when Welenco several weeks later dialed the number that had been assigned to the phone, Sharpless answered as "West Coast Logging," suggesting that Sharpless had taken the SIM card from the Welenco phone.  ¶ 41.

Plaintiffs brought the following claims for relief:  (1) a violation of the Computer Fraud and Abuse Act of 1986, 18 U.S.C. § 1030, against all defendants; (2) computer trespass and violation of California Penal Code § 502 against Craig Corbell and Sharpless; (3) copyright infringement against all defendants; (4)  use of a false designation of origin, in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), by Welenco against all defendants; (5)  false advertising in violation of the Lanham Act, by Welenco against all defendants; (6) trespass to chattels against Craig Corbell and Sharpless; (7) a violation of California Business and Professions Code § 17200 by WWT against all defendants; (8) misappropriation of trade secrets in violation of California Civil Code § 3426.1(b) by Welenco against all defendants; (9) breach of written contract by

1    Welenco against Craig Corbell; (10) breach of written contract against Gary Corbell; and

2    (11) declaratory relief against Gary Corbell.  On September 25, 2013, this court dismissed the

3    tenth and eleventh causes of action.  ECF No. 35.

4    III.    CHARACTERIZING THE INSTANT MOTION; LAW OF THE CASE

5                The court asked the parties to submit supplemental briefing on the question

6    whether Craig Corbell's motion should be treated as a motion for reconsideration or is barred by

7    the law of the case doctrine.

8                "[D]esigned to aid in the efficient operation of court affairs," *Herrington v. County*

9    *of Sonoma*, 12 F.3d 901, 904 (9th Cir 1993), the law of the case doctrine requires a court's

10   decision "be followed in all subsequent proceedings in the same case." *United States v. Bad*

11   *Marriage*, 439 F.3d 534, 540 (9th Cir. 2006).   For the doctrine to apply, the issue raised "must

12   have been 'decided explicitly or by necessary implication in [the] previous disposition.'" *Id*.

13   (quoting *Liberty Mut. Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982)).   However, a court

14   may depart from the doctrine if "'1) the first decision was *clearly erroneous*; 2) an intervening

15   change in the law has occurred; 3) the evidence . . . is substantially different; 4) other changed

16   circumstances exist; or 5) a manifest injustice would otherwise result.'" *United States v. Cuddy*,

17   147 F.3d 1111, 1114 (9th Cir. 1998) (quoting *United States v. Alexander*, 106 F.3d 874, 876 (9th

18   Cir. 1997) (emphasis in original).

19               This court expressly denied Gary Corbell's motion to transfer venue to the Fresno

20   division of this court, in which Craig Corbell and Boredata joined, on September 26, 2013.  ECF

21   No. 35.  Defendants argue the law of the case doctrine does not apply because there is no earlier

22   appellate decision binding this court.  ECF No. 49 at 2. They are incorrect:  the doctrine applies to

23   a district court's earlier decision in the same case.  *Herrington*, 12 F.3d at 904 ("Under the

24   doctrine, a court is generally precluded from reconsidering an issue previously decided by the

25   same court . . . .").  Defendants also argue, in essence, that they had no control over how Gary

26   Corbell chose to litigate the motion and so should not be bound by the order flowing from it.  *Id*.

27   at 2.  The application of the doctrine does not depend on these parties' control over Gary

28   Corbell's motion, however, particularly in light of their joinder of the motion.  *See Thomas v.*

6

1    *Hickman*, No. CV F 06-0125 AWI SMS, 2008 WL 2233566, at *3 (E.D. Cal. May 28, 2008)

2    (rejecting party's claim that law of the case should not apply because previous motion was

3    brought by different attorney).   These defendants would have been content to accept the results

4    of the prior ruling had it been decided in their favor, as their joinder made clear; they cannot now

5    disclaim their intent to be bound by the ruling.

6          Even though the law of the case doctrine provides sufficient reason to deny the

7    motion, it also fails on the merits, as discussed below.

8    IV.    CHANGE OF VENUE

9          A.   Standard

10          Under Local Rule 120(f), "[w]henever in any action the Court finds upon . . .

11   motion of any party . . . that the action has not been commenced in the proper court in accordance

12   with this Rule, or for other good cause, the Court may transfer the action to another venue within

13   the District."   Courts often apply the factors developed to evaluate a change of venue under 28

14   U.S.C. § 1404(a) in considering a request for an intradistrict transfer.  *Oliver v. Schmidt Transp.,*

15   *Inc.*, No. 11–1158–JAR, 2011 WL 4368999, at *1 (D. Kan. Sep. 19, 2011); *see also Bell v.*

16   *Sepulvado*, No. 2:12-CV-44 JRG, 2013 WL 1181459, at *2 (E.D. Tex. Mar. 19, 2013) (stating

17   that a court should view a motion for an intradistrict venue change with more caution because the

18   Federal Rules give the district court discretion in deciding the place for trial); FED. R. CIV. P.

19   77(b)).

20          When the district court finds that venue is proper, it is still within its discretion,

21   "[f]or the convenience of the parties and witnesses, [and] in the interest of justice," to transfer an

22   "action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).

23   "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for

24   transfer according to an 'individualized, case-by-case consideration of convenience and

25   fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v.*

26   *Barrack*, 376 U.S. 612, 622 (1964)).  "In ruling on a motion to transfer pursuant to § 1404(a), the

27   Court must evaluate three elements: (1) convenience of the parties; (2) convenience of the

28   witnesses; and (3) interests of justice."  *Safarian v. Maserati N. Am., Inc.*, 559 F. Supp. 2d 1068,

7

1071 (C.D. Cal. 2008) (citations omitted).  "Once the court determines that venue is proper, the movant must present strong grounds for transferring the action . . . ."  *Id.* (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).  "[A] motion to transfer venue for convenience pursuant to 28 U.S.C. § 1404(a) does not concern the issue 'whether and where' an action may be properly litigated.  It relates solely to the question where, among two or more proper forums, the matter should be litigated to best serve the interests of judicial economy and convenience to the parties."  *Injen Tech. Co. v. Advanced Engine Mgmt.*, 270 F. Supp. 2d 1189, 1193 (S.D. Cal. 2003) (citations omitted).

In determining whether transfer is proper, the court must "balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum."  *Decker Coal*, 805 F.2d at 843 (citations omitted).  The moving party must make a strong showing of inconvenience to upset the plaintiff's choice of forum.  *Id.*  According to the Ninth Circuit, relevant factors determining whether transfer is appropriate may include: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000), *cert. denied*, 531 U.S. 928 (2000) (citing *Stewart Org.*, 487 U.S. at 29).

The court attaches a "strong presumption in favor of plaintiff's choice of forum."  *Piper Aircraft v. Reyno*, 454 U.S. 235, 255 (1981).  Therefore, a defendant must be able to make a strong showing of inconvenience to upset a plaintiff's choice.  *Id.* at 241.

B.  Analysis

Neither party disputes that the Eastern District of California has jurisdiction under 28 U.S.C. §§ 1331, 1338(a), and 1367, or that venue is proper in the Eastern District of California.  Plaintiff does not dispute that this action could have been brought in the Fresno

/////

8

1   Division.  Therefore, venue would be proper in the Eastern District of California, Fresno

2   Division.

3          To determine whether transfer is appropriate, the court next considers the

4   convenience of the parties, the convenience of the witnesses, and the interests of justice,

5   examining relevant *Jones* factors.

6          C.  Plaintiff's Choice of Forum and Convenience of the Parties

7          Under § 1404(a) and *Jones*, courts consider the convenience of the parties by

8   analyzing plaintiff's choice of forum, the respective parties' contacts with the forum, and the

9   contacts relating to  plaintiff's claims in the chosen forum.  *Jones*, 211 F.3d at 498-99.

10          When considering the parties' contacts with the forum, courts also consider

11   "contacts relating to the plaintiff's cause of action in the chosen forum."  *Jones*, 211 F.3d at 498.

12   The plaintiffs and defendants both have contacts within and outside of the Sacramento Division.

13   Plaintiffs WWT and Welenco are both California corporations with business offices in Kern

14   County and Sacramento County, California.  FAC ¶ 4.  Plaintiff WWT has its principal place of

15   business in Sacramento County.  ECF No. 40 at 4.  Plaintiff Welenco's main corporate office is in

16   Bakersfield, California.   ECF  No. 37 at 6; *see* ECF No. 38, Decl. Craig G. Corbell ("Corbell

17   Decl.") ¶ 6; ECF No. 38, Ex. A (depicting plaintiff Welenco's website).)

18          Defendant Boredata is a California corporation with its principal place of business

19   in Bakersfield. ECF No. 37 at 5; FAC ¶ 6; *see* Corbell Decl. ¶ 4.  Defendants Craig and Gary

20   Corbell reside in Bakersfield.  ECF No. 37 at 5-6; *see* Corbell Decl. ¶ 3.  Mark Sharpless is the

21   only defendant residing in Sacramento County.  ECF No. 37 at 6; *see* ECF No. 41, Declaration of

22   Dan Guardino ("Guardino Decl.") ¶ 4.)  Because defendant Sharpless is the only defendant to

23   reside in Sacramento, defendants contend "Kern County is a more convenient venue for the

24   parties."  ECF No. 37 at 6.  They also put great stock in the forum-selection clauses in the four

25   agreements identifying Kern County Superior Court as the only proper venue.  ECF No. 37 at 5,

26   7; ECF No. 43 at 1-2.  However, the court does not read this motion as one to enforce the forum

27   selection clause, as the clause contemplates litigation in the Kern County Superior Court while

28   /////

9

1  this motion, though perhaps not a model of clarity, seeks transfer to the Fresno Division of this

2  court. *See* n.1 *supra*.

3  Courts do look to the location where "relevant agreements were negotiated and

4  executed." *Jones*, 211 F.3d at 498. Defendants contend that four significant written agreements

5  were all negotiated and executed in Kern County, including: a stock purchase and sale agreement,

6  a secured promissory note, defendant Craig Corbell's employment agreement with Welenco, and

7  defendant Corbell's covenant not to compete. ECF No. 37 at 5. Plaintiffs point out, however,

8  that the vast majority of their "remaining causes of action are tort or statutory claims and do not

9  require any analysis as to whether the parties were in compliance with the terms of the underlying

10  agreements." ECF No. 40 at 4. Thus, they argue, the factor is "essentially irrelevant." *Id.*

11  Defendants counter that according to the First Amended Complaint, the unfair competition and

12  violation of the noncompetition clause caused losses in Welenco's "Southern Territory," which

13  does not encompass northern California. Corbell Decl. ¶ 8; *see also* FAC ¶¶ 23-25 (describing

14  the southern territory as including Southern California, Nevada and Arizona).

15  Because the parties have ties to both Fresno and Sacramento, this factor is neutral.

16  D.      Convenience of the Witnesses

17  To demonstrate inconvenience to witnesses, the moving party should produce

18  information regarding the identity and location of the witnesses, the content of their testimony,

19  and why such testimony is relevant to the action. *Florens Container v. Cho Yang Shipping,*

20  245 F. Supp. 2d 1086, 1092-93 (N.D. Cal. 2002); *Steelcase, Inc. v. Haworth*, 41 U.S.P.Q.2d 1468,

21  1470 (C.D. Cal. 1996). Convenience of nonparty witnesses is often the most important factor in

22  the section 1404(a) calculus. *Tolentino v. Mossman*, No. 2:07-CV-1243-GEB-DAD, 2008 WL

23  1787752, at *1 (E.D. Cal. Apr. 18, 2008).

24  Craig Corbell avers in conclusory fashion that "[t]o my knowledge all the Welenco

25  employees who are witnesses reside in Bakersfield. These witnesses include the following

26  individuals: Dan Ihde, David Jackson, Miguel Gomez, Brian Newman and Jim Galongo."

27  Corbell Decl. ¶ 9. He also avers that "Scott Mauer, whose involvement includes preparing

28  relevant CAD drawings and overseeing Welenco's computer network, also resides in

Bakersfield." *Id.* ¶ 10.  Dan Ihde is named in the First Amended Complaint as someone who was

demoted when Craig Corbell was brought into Welenco and who operated one of Welenco's

geo-logging vans, but defendants do not mention these other witnesses and their motion does not

explain these employees' proposed testimony.  FAC ¶¶ 20-21; *see* ECF No. 37 at 6.  Not until

their reply do defendants suggest these witnesses might be able to testify about Welenco's efforts

or lack thereof to protect trade secrets and whether employees learned alleged protected

information on the job or it was known throughout the industry.  ECF No. 43 at 2.   Defendants

have also presented a second declaration of Craig Corbell, identifying additional witnesses who

live in Bakersfield, ECF No. 44, and in the reply describe these witnesses' proposed testimony.

ECF No. 43 at 4.  Once again, the court declines to consider the supplemental declaration and the

information presented for the first time in reply. *Zamani v. Carnes,* 491 F.3d 990, 997 (9th Cir.

2007) (court need not consider arguments raised for the first time in a reply brief); *Coleman v.*

*Brown*, 938 F. Supp. 2d 955, 974,  n.35 (E.D. Cal. 2013) (stating that "the time and place" for a

movant to submit evidence in support of the motion is with the motion, not the reply).  Thus, in

their moving papers, defendants have explained the substance of only one witness's testimony:

Scott Mauer, who oversaw the relevant CAD drawings and Welenco's computer network.

Corbell Decl. ¶ 19.

In opposition, Dan Guardino identifies several witnesses from the Sacramento

area, including Tyler McMillan, who inspected Sharpless's geo-logging van, located Craig

Corbell's DropBox folder, and undertook a forensic examination of Craig Corbell's computer.

Guardino Decl. ¶¶ 6-7.  Guardino also opines that Sharpless's van was constructed, at least in

part, by Eaton Drilling, a Woodland company.  *Id*. ¶ 10.  He further describes Sharpless's

poaching of some of Welenco's Sacramento area customers, who will be called as witnesses.  *Id*.

¶ 11.

A court should consider "not only the number of witnesses located in the

respective districts, but also the nature and quality of their testimony in relationship to the issues

in the case."  *Kannar v. Alticor, Inc.*, No. C-08-5505 MMC, 2009 WL 975426, at *2 (N.D. Cal.

Apr. 9, 2009) (quoting *Steelcase*, 41 U.S.P.Q.2d at 1470).   In this case, defendants did not

attempt to explain what information their witnesses, apart from Scott Mauer, would provide until the reply, which came too late.   In contrast plaintiffs have provided sufficient evidence that witnesses in this division will provide evidence important to the case.  Defendants have not shown that the convenience of third party witnesses favors transfer.

E.       Interests of Justice

As set forth above, *Jones* instructs courts to consider additional factors in determining whether transfer is appropriate and the interests of justice favor transfer.  *Jones*, 211 F.3d at 498-99.

The court considers ease of access to evidence.  *Id.* at 499.  Defendants contend that most of the evidence is located in Kern County.  Defendant Corbell worked in Welenco's Kern County office.  ECF No. 37 at 6.  The equipment and supplies he used "in connection with the performance of his duties and the obligations to Welenco," as well as the laptop he "allegedly used to commit computer fraud and trespass," are in Kern County as well.  *Id.*; *see* ECF 38 ¶ 7. However, "the ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations."  *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1149 (C.D. Cal. 2009) (internal quotation omitted).

The court also considers which forum is most familiar with the governing law of the case.  As both the Sacramento Division and Fresno Division of the Eastern District are familiar with California law, this factor is neutral.

Furthermore, although the court could consider the costs of litigation in the two fora, *Jones*, 211 F.3d at 498-99, defendants have not shown that defending this action in Sacramento rather than Fresno would significantly increase their costs of litigation.

Finally, courts consider the relative docket congestion of the two fora to determine whether the case may be tried earlier because of a less crowded docket.  *Decker Coal*, 805 F.2d at 843; *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984).  This factor does not favor transfer as the Eastern District as a whole has one of the highest weighted caseloads per judge in the nation.  *Parker v. FedEx Nat., Inc.*, No. 1:10–cv–1357–LJO–MJS, 2010 WL

12

5113809, at *4 (E.D. Cal. Dec. 9, 2010).  If anything, with the recent reduction in caseload exercised by the Fresno division's one senior district judge – who has earned the right to hear no cases at all – the docket congestion factor weighs slightly in favor of maintaining the case here.

Overall defendants have not borne their burden of showing that this court should not honor plaintiffs' choice of forum, as the factors informing the change-of-venue inquiry are either neutral or favor Sacramento as a forum.

IT IS THEREFORE ORDERED that defendants' motion to transfer, ECF No. 37, is DENIED.

DATED:  January 13, 2014.

_____
UNITED STATES DISTRICT JUDGE

13