1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   WELENCO, INC., et al.,                    No.  2:13-cv-0287 KJM CKD

12                    Plaintiffs,

13          v.                                  ORDER

14   GARY CORBELL, et al.,

15                    Defendants.

16

17

18          Before the court are motions for summary judgment filed by defendants Gary W.

19   Corbell, ECF No. 109, and Boredata, Inc. and Craig G. Corbell, ECF No. 110.  Plaintiffs Water

20   Well Technology, Inc. (Water Well) and Welenco, Inc. (Welenco) oppose both motions, and seek

21   sealing of certain documents.  ECF Nos. 125, 126, 127.  Defendants have replied.  ECF Nos. 129,

22   132.  The court held a hearing on this matter on April 24, 2015.  Jarom Phipps appeared for

23   plaintiffs, Joseph Werner appeared for defendant Gary Corbell and Tom McCartney appeared for

24   defendants Craig Corbell and Boredata, Inc.  As set forth below, the court GRANTS IN PART

25   and DENIES IN PART the pending motions.

26   I.     PROCEDURAL BACKGROUND

27          On February 14, 2013, plaintiffs Welenco and Water Well filed a complaint

28   against defendants Mark Sharpless, Boredata, Gary W. Corbell and Craig G. Corbell, alleging

1

1    various claims related to Craig Corbell's formation of the geo-logging company Boredata,

2    allegedly formed while Craig Corbell was still employed by Welenco and using confidential

3    Welenco business information.  *See generally* Compl., ECF No. 2.   On March 27, 2013, Craig

4    Corbell and Boredata filed an answer and asserted a counterclaim.  ECF No. 11.

5           Plaintiffs filed an amended complaint, the operative complaint, on July 24, 2013,

6    naming as defendants Gary Corbell, Craig Corbell, Mark Sharpless and Boredata Incorporated.

7    First Am. Compl. (FAC), ECF No. 23.  Plaintiffs bring eleven claims: (1) violation of the

8    Computer Fraud and Abuse Act of 1986 (CFAA), 18 U.S.C. § 1030; (2) computer trespass and

9    violation of California's Comprehensive Computer Data Access and Fraud Act (CDAFA),

10   California Penal Code § 502, against Craig Corbell; (3) copyright infringement; (4) use of a false

11   designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (5) false

12   advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (6) trespass to chattels

13   against Craig Corbell; (7) violation of California Business and Professions Code § 17200;

14   (8) misappropriation of trade secrets in violation of California Civil Code § 3426.1(b); (9) breach

15   of written contract against Craig Corbell; (10) breach of written contract against Gary Corbell;

16   and (11) declaratory relief against Gary Corbell.  *Id.*  On August 14, 2013, Gary Corbell filed a

17   motion to dismiss, ECF No. 26, which Craig Corbell and Boredata joined on the same day, ECF

18   No. 28.  The court dismissed claims ten and eleven on September 26, 2013.  ECF No. 35.

19   Defendant Mark Sharpless and counterdefendant Welenco, Inc. were dismissed on November 14,

20   2014 upon the parties' stipulation.  ECF No. 77.

21          On February 6, 2015, the magistrate judge granted defendants' motions to compel

22   and ordered plaintiffs to produce responsive documents and complete interrogatories by February

23   13, 2015.  ECF No. 99.  Plaintiffs were cautioned that not complying with the order would result

24   in the imposition of sanctions.  *Id.*  Plaintiffs nonetheless failed to comply, and on February 18,

25   2015, defendants Boredata and Craig Corbell moved for sanctions.  ECF No. 100.  Defendant

26   Gary Corbell joined that motion.  ECF No. 101.  The magistrate judge held a hearing on the

27   motion for sanctions on March 11, 2015.  ECF No. 119.  A day later, on March 12, 2015, the

28   magistrate judge issued findings and recommendations, recommending the motion for sanctions

1   be granted in part and imposing evidentiary sanctions on plaintiffs precluding them from

2   introducing into evidence, either in opposition to summary judgment or at trial, any documents

3   that were not produced by plaintiffs prior to February 14, 2015, and any testimony from witnesses

4   John Duffield, Daniel Guardino, Tyler McMillan, or any person designated to testify on behalf of

5   the corporate plaintiffs Welenco and Water Well.  ECF No. 121.

6           On February 27, 2015, defendants filed separate motions for summary judgment.

7   ECF Nos. 109, 110.  On April 10, 2015, Water Well and Welenco filed oppositions to both

8   motions for summary judgment.  ECF Nos. 125, 126.  On April 17, 2015, Gary Corbell filed a

9   reply and objection to declarations submitted with plaintiffs' opposition.  ECF Nos. 129, 131.

10  That same day, Craig Corbell and Boredata filed a reply and objections to evidence.  ECF Nos.

11  132, 133.

12          On April 24, 2015, after summary judgment briefing was completed, the court

13  adopted the magistrate judge's findings and recommendations on sanctions, granting the defense

14  motion for sanctions in part, and directing the parties to file a joint statement regarding the status

15  of documents, testimony, and declarations the court may consider in deciding summary judgment.

16  ECF No. 138.  The parties filed their joint statement on May 8, 2015, setting forth their differing

17  positons regarding the effect of the evidentiary sanctions.  ECF No. 139.  The court addresses the

18  evidentiary issues immediately below.

19  II.     EVIDENTIARY RECORD

20          A.  Objections

21          In general, evidence presented with a motion for summary judgment must be

22  admissible.  *See* Fed. R. Civ. P. 56(e); *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

23  At this stage, however, the court's consideration of evidence depends not on its form, but on its

24  content.  *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001).  The party seeking

25  admission of evidence "bears the burden of proof of admissibility."  *Pfingston v. Ronan Eng'g*

26  *Co.*, 284 F.3d 999, 1004 (9th Cir. 2002).  If the opposing party objects to the proposed evidence,

27  the party seeking admission must direct the district court to "authenticating documents, deposition

28  testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary

3

1 principles under which the evidence in question could be deemed admissible . . . ." *In re Oracle*

2 *Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010).  Courts are generally "much more

3 lenient" with the affidavits and documents of the party opposing summary judgment.  *Scharf v.*

4 *U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).

5            The court acknowledges and enforces the evidentiary sanctions recommended by

6 the magistrate judge and adopted by this court.  Those sanctions exclude documents that were not

7 produced by plaintiffs prior to February 14, 2015, and any testimony from witnesses John

8 Duffield, Daniel Guardino, Tyler McMillan, or any person designated to testify on behalf of the

9 corporate plaintiffs Welenco and Water Well.  ECF No. 121.  In the parties' joint statement,

10 defendants do not argue any documents submitted with the motions were not produced prior to

11 February 2015 and are therefore are barred from consideration.  ECF No. 139.  Neither do

12 defendants argue that any deposition or Robert Guardino's[1] declaration is inadmissible based on

13 the sanctions.  *Id.*  Rather, defendants argue that Guardino's declaration is replete with statements

14 that lack personal knowledge, *see e.g.* Guardino Decl. ¶¶ 4, 6, 7, 12, 13, 14, lack foundation, *id.*

15 ¶¶ 2, 8, or are based on unauthenticated documents, *id.* ¶¶ 4, 6.  Further, defendants argue several

16 exhibits offered with the opposition to the motion lack the necessary foundation.  Plaintiffs

17 represent that the documents were produced in discovery prior to the February 14, 2015, the

18 cutoff date set by the evidentiary sanctions, and were authenticated by counsel's declaration

19 submitted with the opposition.  Plaintiffs argue that at this stage, the court looks to whether the

20 documents could be authenticated and admissible at trial through testimony by nonprecluded

21 witnesses.  They argue the evidentiary sanctions do not preclude Robert Guardino's testimony,

22 about the documents or based on his own personal knowledge, or consideration of documents

23 subject to the business records exception of the hearsay rule.

24            1.  Guardino Declaration

25            Defendant Gary Corbell objects to the declaration of Robert Guardino and

26 documents attached to the declaration of Jarom Phipps in opposition to the motion, all of which

27

28 _____

[1] All references to Guardino from here on in this order are to Robert Guardino.

1   were produced in the course of discovery.  ECF No. 131.  Defendants Craig Corbell and Boredata

2   also object to Guardino's declaration and the same discovery documents.  ECF No. 133.

3          Specifically, Craig Corbell and Boredata object to the majority of statements in

4   Guardino's declaration as argumentative, lacking foundation, lacking personal knowledge, and

5   say Guardino is not competent to testify on the matters his declaration addresses.  ECF No. 133 at

6   2–5.  To the extent Guardino's statements lack personal knowledge, and the court agrees that

7   many do not, *see, e.g.*, Guardino Decl. ¶¶ 2, 3, 4, the court sustains the objections and does not

8   rely on these statements in reaching its decision.

9                    2.  Document Containing Statement By McMillan

10         Gary Corbell also objects to a document attached to the opposition, WEL 0538-40,

11  containing a statement by Tyler McMillan who refused to be deposed.  Based on the evidentiary

12  sanctions, Mr. McMillan's testimony may not be used as evidence.  The document here, however,

13  was produced prior to February 14, 2015, and may be considered.[2]

14                   3.  Documents Challenged as Not Property Authenticated

15         Defendants Craig Corbell and Boredata object to several other documents attached

16  to the opposition as lacking authentication.  Jarom Phipps, plaintiffs' counsel, authenticated the

17  documents as documents produced in discovery.  "Documents produced in response to discovery

18  requests are admissible on a motion for summary judgment since they are self-authenticating and

19  constitute the admissions of a party opponent."  *Anand v. BP W. Coast Products LLC*, 484 F.

20  Supp. 2d 1086, 1092 (C.D. Cal. 2007).  Given the lack of any argument the documents are

21  inauthentic, *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 972

22  (C.D. Cal. 2006), and the leniency with which courts treat evidence offered by the nonmoving

23  party in summary judgment, *Scharf*, 597 F.2d at 1243, the objection is overruled.  *See Del Campo

24  v. Am. Corrective Counseling Serv., Inc.*, 718 F. Supp. 2d 1116, 1123 n. 10 (N.D. Cal. 2010)

25  ("Since Defendants do not specify any reason to doubt the authenticity of documents that they

26  _____

27         [2] Plaintiffs filed their opposition to the motions for summary judgment as if the
    evidentiary sanctions had been adopted and were in place. Joint Statement at 9, ECF No. 139.
28  Defendants do not allege any document attached to the opposition was not produced, but object to
    their consideration on other grounds.

1    themselves produced in discovery, the Court finds the documents properly authenticated under

2    Fed. R. Evid. 901.”); *Burch v. Regents of the University of California*, 433 F. Supp. 2d 1110,

3    1118–24 (E.D. Cal. 2006) (finding that “whether the authentication requirement should be applied

4    to bar evidence when its authenticity is not actually disputed is, however, questionable”).  Even

5    absent authentication, authentication may be inferred, as it is here, from the contents of the

6    documents.  *See* Fed. R. Evid. 901(b)(4) (authenticity may be satisfied by the “[a]ppearance,

7    contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction

8    with circumstances”); *accord Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011); *see

9    also Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n.12 (9th Cir. 1996)

10   (district court did not err in considering unauthenticated documents submitted with summary

11   judgment motion when the documents were produced, on company letterhead, and plaintiff did

12   not contest authenticity).

13          4.   Other Evidence

14          The court has not considered any testimony not based on personal knowledge, or

15   that is merely speculative.  This includes several statements in Robert Guardino’s declaration,

16   including his speculation as to what the Corbells discussed, or their actions, knowledge or

17   intentions, to which he is not a proper declarant.  To the extent defendants object on hearsay

18   grounds, the court sustains the objections to statements for which a declarant has no personal

19   knowledge, *see* Fed. R. Evid. 602, or documents that do not reflect statements of a party-

20   opponent, *id*. 801(d)(2), because that evidence would not be admissible at trial.  *See* Fed. R. Civ.

21   P. 56(e); *see also Orr v. Bank of America,* 285 F.3d 764, 773 (9th Cir. 2002) (evidence must be

22   admissible to be considered at summary judgment).

23          B.   Motion to Seal

24          Plaintiffs request to seal several documents produced by parties in discovery,

25   identified as CGC007244-CGC007255; CGC007256-CGC007279; WEL0479-80; WEL0538-40;

26   WEL0546; WEL1118; WEL1421; WEL1426; WEL1428; WEL1960; and WEL2050-67.  ECF

27   No. 127.  Documents originally produced by defendants during discovery are identified by the

28   prefix “CGC”; documents originally produced by plaintiffs are identified by “WEL.”  *Id*. at 1.

The documents covered by the sealing request relate to Tyler McMillan's review of Craig Corbell's work laptop, a customer list and related customer information, charts and information concerning Welenco's revenues, and the promissory note related to the formation of Boredata. The court has reviewed unredacted versions of the documents *in camera*.

On September 12, 2014, the magistrate judge assigned to this action entered a stipulation and protective order providing:

> No information designated Confidential or Highly Confidential, nor any documents disclosing, reproducing, or paraphrasing, in whole or part, Confidential or Highly Confidential Information may be filed or submitted to the Court unless the submission complies with the procedures set forth in Local Rule 141 for filing documents under seal.

ECF No. 66 ¶ 9.

Each document covered by the request to seal has been designated Confidential or Highly Confidential by the producing party. As a threshold matter, the parties are reminded of this court's standing order regarding sealing motions, which provides:

> Sealing and Protective Orders:  No document will be sealed, nor shall a redacted document be filed, without the prior approval of the court.  All requests to seal or redact shall be governed by Local Rules 141 (sealing) and 140 (redaction); protective orders covering the discovery phase of litigation shall not govern the filing of sealed or redacted documents on the public docket.  The court will only consider requests to seal or redact filed by the proponent of sealing or redaction.  If a party plans to make a filing that includes material an opposing party has identified as confidential and potentially subject to sealing, the filing party shall provide the opposing party with sufficient notice in advance of filing to allow for the seeking of an order of sealing or redaction from the court.

Civil Standing Order (available on the court's web page); *see also* ECF No. 5-1 ¶ 10.  Here, some of the documents plaintiffs seek to seal are related to defendants' financial records and job history.  Thus, defendants are the proper proponents of sealing or redaction.  *Id.*  Plaintiffs had a duty to provide defendants with sufficient notice in advance of filing their opposition papers so defendants could elect to seek an order of sealing or redaction.  *Id.*  Instead, plaintiffs filed the instant request to seal.  Nevertheless, considering the posture of the request and the status of the case, the court declines to strike the request to seal and addresses the merits of the request.

The Local Rules of the Eastern District of California provide that "[d]ocuments may be sealed only by written order of the Court." L.R. 141(a).  A request to seal "shall set forth the statutory or other authority for sealing, the requested duration, the identity, by name or category, of persons to be permitted access to the documents, and all other relevant information." *Id*. 141(b).

There is a strong presumption in favor of public access to court records.  *See Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002).  However, "access to judicial records is not absolute." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).  The Ninth Circuit has distinguished between the public's interest in accessing court records filed in connection with nondispositive and dispositive motions.  *See Phillips*, 307 F.3d at 1206; *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003); *Kamakana*, 447 F.3d at 1172; *In re Midland Nat'l Life Ins. Co.*, 686 F.3d 1115, 1119 (9th Cir. 2012).

To seal documents filed in connection with a dispositive motion such as summary judgment, parties must show there are "compelling reasons" for doing so.  *Kamakana*, 447 F.3d at 1180, 1182 ("[T]he proponent of sealing bears the burden with respect to sealing.").  To demonstrate compelling reasons, a party is "required to present articulable facts identifying the interests favoring continued secrecy and to show that these specific interests [overcome] the presumption of access by outweighing the public interest in understanding the judicial process." *Id*. at 1181 (internal citations, quotation marks, and emphasis omitted).  "When sealing documents attached to a dispositive pleading, a district court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id*. at 1182 (internal citation, quotation marks, and emphasis omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 679 (9th Cir. 2007) (vacating and remanding district court's denial of sealing where court applied good cause standard to documents filed in connection with summary judgment motions).  "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets."

1   *Kamakana*, 447 F.3d at 1179 (quoting *Nixon v. Warner Communs., Inc.*, 435 U.S. 589, 589

2   (1978)).  "The 'compelling reasons' standard is invoked even if the dispositive motion, or its

3   attachments, were previously filed under seal or protective order."  *Id.*

4           To the extent plaintiffs argue that sealing is proper in light of the parties' existing

5   protective order, this argument is without merit.  Here, the issuance of that protective order did

6   not involve the court's considered application of the "compelling reasons" standard.  The

7   presumption of access to court records is not rebutted simply because the court has approved the

8   stipulated discovery phase protective order.  *Kamakana*, 447 F.3d at 1183 (concluding that

9   "[a]lthough the magistrate judge expressly approved and entered the protective order, the order

10  contained no good cause findings as to specific documents that would justify reliance by the

11  United States" and, therefore, "the claimed reliance on the order is not a compelling reason that

12  rebuts the presumption of access" (citations and internal quotation marks omitted)); *see also*

13  *Foltz*, 331 F.3d at 1136, 1138.

14          Other than relying on the stipulated protective order and state statutes, plaintiffs do

15  not point to any other reasons or authority in support of their request to seal.  ECF No. 127.

16  Without more, plaintiffs have failed to meet the requirement that a party make a particularized

17  showing that demonstrates compelling reasons to seal documents submitted in connection with a

18  dispositive motion.  *Cf. Pryor v. City of Clearlake*, No. C 11–0954 CW, 2012 WL 2711032, at

19  *1–2 (N.D. Cal. July 6, 2012) ("generalized assertion of a privacy interest is not sufficient to

20  warrant barring disclosure of a judicial record" but finding sealing proper where it concerned

21  information that was sensitive, private and there was a likelihood "it was filed . . . because of

22  private spite or a desire to scandalize the public").

23          Because plaintiffs have not borne the burden of establishing a compelling reason

24  for the court to grant their request to seal the documents referenced in the oppositions to the

25  defendants' separate motions for summary judgment, the court denies the request.  Plaintiffs are

26  directed to file the documents on the docket within seven (7) days, with redacted versions of

27  WEL 1421, WEL 1426, and WEL 1428 omitting any personal information of third parties.

28  /////

1    III.    UNDISPUTED FACTS

2           Water Well purchased Welenco from its owner and President, Gary W. Corbell, in

3    May 2007[3] to form a "water well repair, swaging operations and geo-logging" business.[4]  SUFs 1,

4    5; Corbell Decl. at 2, ECF No. 109-3.  As a material condition of the purchase agreement, Ex. 2 at

5    71, ECF No. 24, a contemporaneous employment agreement provided that Gary Corbell's son

6    Craig was to remain employed by Welenco, where he had worked for several years, until May 3,

7    2010, ECF No. 2-3 at 5.  On October 31, 2011, Welenco President Robert Guardino sent Craig

8    Corbell a letter reminding him of the employment agreement and stating that, unless Corbell

9    elected to terminate the agreement by providing written notice, it renewed automatically and

10   Corbell remained bound by its terms.  ECF No. 125-3 at 8.

11          Throughout 2011 and 2012, the Corbells exchanged multiple emails developing a

12   plan to form a geo-logging business, financed by Gary Corbell and operated by Craig Corbell.

13   *See, e.g.*, ECF No. 126-3 at 13, 15, 27.  On October 20, 2011, Gary Corbell wrote an email to

14   Craig Corbell stating, in relevant part "(1) make sure there is [sic] not any emails, documents

15   ANYWHERE within weleco [sic] or on ANY computer regarding this. (2) Wonder if you want to

16   download copies [of] all the archived logging files to a portable storage device?"  ECF No. 126-3

17   at 84.

18          Sixty-two technical drawings of vans, wells, and other well-related designs are

19   subject to U.S. Copyright Registration Number VAU 1-132-287.  SUF 17.  According to the

20   registration certificate, Welenco is the owner of the copyright by way of written assignment from

21   two different authors, Scott Mauer and RB Cole, who both worked for Welenco.  SUFs 18, 21.

22

23          [3] Eventually, a dispute arose regarding payments and in July 2014, Gary Corbell
     commenced a state court action to collect the balance due under the promissory note securing the
24   sale.  SUF 7.  Plaintiffs filed a cross-complaint; trial commenced on December 8, 2014 and a
     judgment was entered in favor of Gary Corbell with the cross-complaint dismissed.  SUF 8.  Also,
25   at some point, Water Well ceased all business activities independent of Welenco, and the two are
     now essentially one entity.  SUF 6.
26

27          [4] Swaging is "to shape or bend by means of a swage."  *See* OED Online at www.oed.com.
     A swage is "a tool for bending cold metal. . .to the required shape; also a die or stamp for shaping
28   metal on an anvil, in a press, etc."  *Id.*

10

1   Neither signed a confidentiality agreement covering the drawings.  SUFs 28, 29.  Welenco

2   contends that "[o]n November 7, 2011 . . . Craig Corbell downloaded numerous Welenco

3   proprietary files and documents, including reams of proprietary CAD drawings showing design

4   details of Welenco's geo-logging vans (including designs and technical drawings which are the

5   subject of Welenco's Certificate of Registration), other CAD drawings showing design details of

6   proprietary well swages built by Welenco, Welenco's customer lists[] (including contact

7   information and buying patterns), Welenco's revenue history from its geo-logging territories and

8   other confidential/proprietary information."  SUF 26; FAC ¶ 31.  The customer list was not

9   marked confidential, but employees, including Craig Corbell, signed a company memorandum

10  acknowledging the confidentiality of customer information.  ECF No. 125-3 at 6.

11          In October 2012, Craig Corbell left Welenco and started Boredata with a loan from

12  Gary Corbell.  SUF 1, ECF No. 102-2; ECF No. 125-3 at 37.

13  IV.     LEGAL STANDARD

14          A court must grant a motion for summary judgment in whole or in part, "if . . .

15  there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

16  matter of law."  Fed. R. Civ. P. 56(a).  This is a "threshold inquiry" into whether a trial is

17  necessary at all, that is, whether "any genuine factual issues . . . properly can be resolved only by

18  a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v.*

19  *Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[5]  The court does not resolve disputed questions of

20  fact or credibility, *id.* at 255; rather, it must draw all inferences and view all evidence in the light

21  most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

22  U.S. 574, 587–88 (1986); *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the

23  record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

24  there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of*

25  *Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

26          _____

27          [5] Rule 56 was amended, effective December 1, 2010; however, it is appropriate to rely on
    cases decided before the amendment took effect, as "[t]he standard for granting summary
    judgment remains unchanged."  Fed. R. Civ. P. 56, notes of advisory comm. on 2010

28  amendments.

1    The moving party bears the initial burden of "informing the district court of the

2    basis for its motion, and identifying those portions of the [record] which it believes demonstrate

3    the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

4    (1986). The burden then shifts to the nonmoving party to "go beyond the pleadings" and

5    "designate specific facts" in the record to show a trial is necessary to resolve genuine disputes of

6    material fact. *Id.* The nonmoving party "must do more than simply show that there is some

7    metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Only disputes over

8    facts that might affect the outcome of the suit under the governing law will properly preclude the

9    entry of summary judgment." *Anderson*, 477 U.S. at 247–48.

10   V.    DISCUSSION

11       A.  Craig Corbell/Boredata's Motion

12           1.  First Claim: Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030
13               (CFAA)

14   Plaintiffs' complaint alleges that Craig Corbell violated subsection (a)(4) of this

15   federal statute when he (1) downloaded confidential company files to a personal Dropbox folder,

16   FAC ¶¶ 31, 52; (2) denied plaintiffs access when he replaced the company password to that

17   computer, and delayed in providing plaintiffs with the changed password, *id.* ¶¶ 32, 52; and (3)

18   exceeded his authorized access to his company phone by placing it in his personal name and

19   accessing its storage space to retrieve confidential client contact information, *id.* ¶¶ 39, 50, 51.

20   Plaintiffs aver Corbell caused damage by requiring the use of company resources to investigate

21   the damage and access issues, and causing lost revenue as a result of the unauthorized use.

22   Guardino Decl. ¶¶ 8, 12.

23       The CFAA establishes a cause of action for use of a computer "without

24   authorization" or when "exceed[ing] authorized access" "knowingly and with intent to defraud,"

25   and the defendant "obtains anything of value, unless the object of the fraud and the thing obtained

26   consists only of the use of the computer and the value of such use is not more than $5,000 in any

27   1-year period." 18 U.S.C. § 1030(a)(4). The term "exceeds authorized access" is defined as "to

28

12

1    access a computer with authorization and to use such access to obtain or alter information in the

2    computer that the accesser is not entitled so to obtain or alter." *Id*. (6).  While the statute is

3    criminal in nature, civil liability may attach if the loss is greater than $5,000.  18 U.S.C. §

4    1030(c)(4)(A)(i)(I).

5         The Ninth Circuit has construed the statute in *United States v. Nosal*, a criminal

6    case factually similar to this one.  *Nosal* involved a plaintiff who left his executive search firm to

7    start a competing business and convinced several employees who remained with his previous

8    employer to access the employer's computers and "download source lists, names and contact

9    information from a confidential database . . . then transfer[ ] the information to [plaintiff]."  676

10   F.3d 854, 856 (9th Cir. 2012).  The employees accused of unlawfully accessing the information

11   were authorized by the employer to access the database in question.  *See id.*  In interpreting

12   section (a)(4) of the CFAA, the Ninth Circuit narrowly defined "exceeds authorized access" and

13   "without authorization."  *Id*.  It rejected the argument that the statute covered a person authorized

14   to access the information but who "is limited in the use to which he can put that information," *id*.

15   at 857, saying "[t]he government's interpretation would transform the CFAA from an anti-

16   hacking statute into an expansive misappropriation statute."  *Id*.; *see also id.* at 859.  Ultimately,

17   the Circuit determined that "the plain language of the CFAA targets the unauthorized

18   procurement or alteration of information, not its misuse or misappropriation."  *Id*. at 863.  While

19   *Nosal's* focus was on the extent of criminalization of conduct, its reading of the statute has been

20   applied in the civil context.  *See, e.g., Koninklijke Philips N.V. v. Elec-Tech Int'l Co.,* No. 14-CV-

21   02737-BLF, 2015 WL 1289984, at *4 (N.D. Cal. Mar. 20, 2015)*; Oracle Am., Inc. v. TERiX

22   Computer Co., Inc*., No. 5:13-CV-03385, 2014 WL 31344, at *7 (N.D. Cal. Jan. 3, 2014).  At

23   least one court has noted "[t]he definition of 'loss' itself makes clear Congress's intent to restrict

24   civil actions under subsection (I) to the traditional computer 'hacker' scenario—where the hacker

25   deletes information, infects computers, or crashes networks."  *AtPac, Inc. v. Aptitude Solutions,*

26   *Inc.*, 730 F. Supp. 2d 1174, 1185 (E.D. Cal. 2010).

27         Here, Craig Corbell's alleged behavior falls in the category of "misappropriation"

28   as opposed to "hacking."  There is no evidence that Corbell "hacked" any system or files.

1   Plaintiffs' argument is only that Corbell "exceeded his access to his company computer," but

2   there is no evidence he breached security protocols to obtain the information or accessed files to

3   which he did not have rightful access.  This behavior is not actionable under this statute.  *See*

4   *Dresser-Rand Co. v. Jones,* 957 F. Supp. 2d 610, 620 (E.D. Pa. 2013) (applying *Nosal*, and

5   granting summary judgment where defendants "were authorized to access their work laptops and

6   to download files from them" "even if they subsequently misused those documents to compete

7   against [plaintiff].); *Koninklijke Philips N.V. v. Elec-Tech Int'l Co*., No. CV-02737, 2015 WL

8   1289984, at *3–4 (N.D. Cal. Mar. 20, 2015) (dismissing claim where plaintiff undisputedly

9   authorized to access information he allegedly stole); *Quad Knopf, Inc. v. S. Valley Biology*

10  *Consulting, LLC*, No. 1:13-CV-01262 AWI, 2014 WL 1333999, at *4 (E.D. Cal. Apr. 3, 2014)

11  (same).

12          Plaintiffs' remaining claim that Corbell violated the CFAA by changing his

13  computer's password is similarly unavailing because there are no facts before the court indicating

14  defendant was not authorized to change his password, nor is there evidence that he changed his

15  password at all, only that he withheld it for a couple of hours.  ECF No. 125-3 at 12.

16          Summary judgment is GRANTED as to this claim.

17          2.   Second Claim: Violation of California Penal Code Section 502 (CDAFA)

18          Like the CFAA, the CDAFA allows an individual who "suffers damage or loss by

19  reason of a violation" of any provision of section 502(c) of the statute to bring a private civil

20  action. Cal. Penal Code § 502(e)(1).  The first provision of section 502(c) makes it a violation

21  when a defendant "[k]nowingly accesses and without permission alters, damages, deletes,

22  destroys, or otherwise uses any data, computer, computer system, or computer network in order to

23  either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B)

24  wrongfully control or obtain money, property, or data."  Cal. Penal Code § 502(c)(1).

25          In *People v. Childs*, a California Court of Appeal considered a claim similar to the

26  one plaintiffs make here: an employee defendant refused to reveal a username and password to

27  his employer, disrupting employer's access to the computer.  220 Cal. App. 4th 1079, 1098,

28  (2013).  While a criminal case, *People v. Childs* has been relied on in the civil context.  *See*

1   *NovelPoster v. Javitch Canfield Grp*., No. 13-CV-05186, 2014 WL 5594969, at *10 (N.D. Cal.

2   Nov. 3, 2014).  In *Childs*, defendant argued "that subdivision (c)(5) of section 502 was meant to

3   apply only to unauthorized computer users—hackers—and not to an employee who was

4   authorized to use the computer system but did so in a manner that vexed the employer."  *Id*.

5   Subdivision (c)(5) makes it an offense to "Knowingly and without permission disrupts or causes

6   the disruption of computer services or denies or causes the denial of computer services to an

7   authorized user of a computer, computer system, or computer network."  Cal. Penal Code

8   § 502 (c)(5).  The state court rejected defendant's argument that the Legislature intended that

9   unauthorized access is an implied element of subdivision (c)(5) and held that "disrupting or

10  denying computer services to an authorized user could reasonably be read to fall within

11  'interference' with computers, even without a showing of unauthorized access."  *Id*. at 1101–02.

12          That said, in *Mahru*, a different state appellate court found an employee acting with

13  his employer's authorization, who took steps to exclude a third party user of the employer's

14  computer system, did not violate the statute.  *Mahru v. Superior Court*, 191 Cal. App. 3d 545, 549

15  (1987).  In dicta, the court asserted that the Legislature "could not have meant, by enacting

16  section 502, to bring the Penal Code into the computer age by making annoying or spiteful acts

17  criminal offenses whenever a computer is used to accomplish them. Individuals and organizations

18  use computers for typing and other routine tasks in the course of their affairs, and sometimes in

19  the course of these affairs they do vexing, annoying, and injurious things. Such acts cannot all be

20  criminal." *Id.*; *see also Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29, 36 (2007) (citing

21  this dicta with approval).

22          Here, Craig Corbell wrote in an email dated October 26, 2012, to Gary Corbell that

23  "Dan just emailed me and asked for the password to the laptop I used in the office (forgot to

24  disable it).  I am sure Guardino told him to ask for [sic] and I am sure I got everything off of it, I

25  think I will wait a bit before I give it to him."  ECF No. 125-3 at 12.  The record does disclose an

26  email sent on October 26, 2012, by Daniel Idhe, an employee of Welenco, to Craig Corbell

27  seeking his laptop password.  ECF No. 132-2 at 7.  Craig Corbell responded to the email with the

28  password approximately two and a half hours later, and Idhe thanked him two hours after that.

1    *Id.*  Plaintiffs have not refuted this evidence with any facts.  In his deposition, Guardino

2    confirmed Daniel Idhe was asked to contact Corbell for his password.  Guardino Dep. at 85, ECF

3    No. 110-4.

4           A two hour delay resembles at most merely "vexing," not "hacking," behavior.

5    *See Childs*, 220 Cal. App. 4th at 1105 (agreeing with but distinguishing *Mahru* because "his case

6    involves employee computer misconduct that is anything but routine").  Witholding a password

7    for two hours is not comparable to "lock[ing] out every other potential user and [wiping] out

8    system data if anyone other than him attempted to access his employer's computer system."  *Id.*

9    Plaintiffs have not established a triable issue as to whether Corbell interfered with the company's

10   access to his laptop in a way that is actionable under the statute.  Summary judgment is therefore

11   GRANTED on this claim.

12                    3.   Third Claim: Copyright Infringement

13          To establish copyright infringement, a plaintiff must show: "(1) ownership of a

14   valid copyright, and (2) copying of constituent elements of the work that are original."  *Feist*

15   *Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991).

16          Defendant argues that Welenco does not own the alleged copyright-protected

17   technical drawings at issue.  The copyright registration certificate and the technical drawings

18   covered by it are attached to the first amended complaint.  Ex. 1, ECF No. 24.  According to the

19   registration certificate, Welenco is the owner of the copyright by way of written assignment from

20   two different authors, Scott Mauer and RB Cole.  *Id.*  The assignment is disputed by Mauer, who

21   says he created the works as an independent contractor for Welenco, never signed any written

22   agreement related to his work and was never an employee of Welenco.  Mauer Decl. ¶ 4, ECF

23   No. 110-10.  Mauer says specifically he has not signed an agreement transferring ownership or

24   agreed orally or in writing to transfer any rights to his drawings to Welenco.  *Id.* ¶ 5.  As a general

25   rule, the author who actually creates the work, that is, the person who translates an idea into a

26   fixed, tangible expression is entitled to copyright protection.  *Cmty. for Creative Non-Violence v.*

27   *Reid*, 490 U.S. 730, 737 (1989) (citing 17 U.S.C. § 102).  However, in works "made for hire," the

28   employer owns the copyright.  17 U.S.C. § 201(b).  Given the disputed nature of employment

1   between Mauer and Welenco, and the lack of record evidence on the issue, the court draws

2   inferences in favor of the nonmoving party at this stage, and cannot find as a matter of law that

3   Welenco did not own the copyright of the technical drawings.

4       Even assuming Welenco ownership, plaintiffs cannot show they are entitled to

5   actual or statutory damages.  Statutory damages are not available because the alleged

6   infringement occurred on November 7, 2011, before the effective date of the registration

7   certificate, May 24, 2013.  Opp'n at 6; Ex. 1, ECF No. 24.   Plaintiffs concede as much in their

8   opposition, but argue they are entitled to actual damages because they "can show emails, business

9   registration certificates, and van pictures to evidence how Craig Corbell has been actively using

10   the copyrighted material."  Opp'n at 7.   However, they have not produced any of this evidence,

11   and even if such evidence exists are precluded from doing so by the evidentiary sanctions being

12   enforced against them.

13       Summary judgment is GRANTED on this claim.

14       4.   Fourth and Fifth Claims: Lanham Act Violations

15       Claims under the Lanham Act "may be based on a false statement of fact, or [] on

16   an advertisement which uses a distinct name or mark to create a false association."  *Two Jinn, Inc.*

17   *v. Gov't Payment Serv., Inc.*, 233 Cal. App. 4th 1321, 1345 (2015).  Here, plaintiffs claim both

18   Lanham Act violations, alleging defendants "have used and will continue to use a false

19   designation of origin that is likely to cause confusion, mistake, or deception as to affiliation,

20   connection, or association of defendants with plaintiff."  FAC ¶ 71 (citing 15 U.S.C.

21   1125(a)(1)(A)).  Further, plaintiffs allege defendants "falsely stated and advertised the

22   source/origin of their products and services in a manner intended to pass off their

23   products/services as those of [p]laintiff, or to otherwise benefit from deception or mistake among

24   consumers whereby consumers would identify [d]efendants' products/services as those

25   manufactured, sold, licensed, or otherwise endorsed by [p]laintiff," and "have engaged in false

26   advertising."  FAC ¶¶ 75, 76 (citing 15 U.S.C. §1125(a)(1)(B)).

27       Plaintiffs contend they can "show that Craig Corbell took unauthorized access of

28   the company cell phone number, and advertised his private number" as plaintiffs' and "that Craig

1    Corbell used company time and resources to solicit personal business from Welenco clients."

2    Opp'n at 7, ECF No. 125.  Here again, plaintiffs have not pointed to any evidence supporting

3    these claims.  While they cite to the declaration of Robert Guardino, it does not provide critical

4    facts needed to survive summary judgment.  *See* Guardino Decl. ¶¶ 11, 12.  There are no emails

5    or phone records in any of the exhibits submitted with the opposition showing a misleading

6    number, no advertisements in which Craig Corbell solicits business as Welenco or identifies his

7    private number as Welenco's number, and there is no testimony from a client of either Welenco

8    or Boredata implying Corbell erroneously advertised himself as another party.  *See generally*

9    Opp'n, ECF No. 125.

10          Without any factual support for the Lanham Act claims, plaintiffs have not met

11   their burden to show any genuine dispute of fact.  *See Cascade Yarns, Inc. v. Knitting Fever, Inc.*,

12   905 F. Supp. 2d 1235, 1250 (W.D. Wash. 2012) (granting summary judgment on Lanham Act

13   claim where plaintiff has offered no evidence of a false statement).  Accordingly, summary

14   judgment is GRANTED as to claims four and five.

15                    5.   Sixth Claim: Trespass to Chattels

16          Defendants argue this claim is based on the statutory computer claims, claims one

17   and two, which cannot survive summary judgment; they also say plaintiffs cannot show any

18   damages as required to ultimately prevail.  Boredata Mot. at 7.  Here, plaintiffs allege Craig

19   Corbell interfered with "the laptop drive and cell phone storage media."  FAC ¶ 81.  On summary

20   judgment, plaintiffs contend that because they have documents showing "Welenco revenue

21   history, Boredata earnings, and Boredata job lists," they can show damages.  Opp'n at 7.

22          Under California law, trespass to chattels "lies where an intentional interference

23   with the possession of personal property has proximately caused injury."  *In re iPhone*

24   *Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) (quoting *Intel Corp. v. Hamidi*,

25   30 Cal. 4th 1342, 1350–51 (2003)).  A trespasser is liable when the trespass diminishes the

26   condition, quality or value of personal property.  *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp.

27   2d 1058, 1071 (N.D. Cal. 2000).  "An interference (not amounting to dispossession) is not

28   actionable, under modern California and broader American law, without a showing of harm."  *In*

18

1   *re iPhone Application Litig.*, 844 F. Supp. at 1069.  One who intentionally intermeddles with

2   another's chattel is liable "only if his intermeddling is harmful to the possessor's materially

3   valuable interest in the physical condition, quality, or value of the chattel, or if the possessor is

4   deprived of the use of the chattel for a substantial time, or some other legally protected interest of

5   the possessor is affected . . . ."  *Jamgotchian v. Slender*, 170 Cal. App. 4th 1384, 1401 (2009).

6           While plaintiffs argue they have documents showing damages, they have not yet

7   produced them, and are barred from doing so by the evidentiary sanctions.  On the record before

8   the court, there are no facts in the record showing defendant's use of the cell phone dispossessed

9   plaintiffs of its use at any time, or that defendant interfered with the company's access to his

10  laptop, as discussed above.

11          Summary judgment is GRANTED as to this claim.

12          6.   Seventh Claim: Unfair Business Practices, Cal. Bus. & Prof. Code § 17200

13          Plaintiffs allege defendants engaged in unfair, unlawful, and deceptive business

14  practices "including commercial impersonation of Welenco," "conversion of Plaintiffs' property

15  and trespass upon Plaintiffs' computer systems," "for the purpose of harming Plaintiffs' business

16  and causing competitive injury" "by diverting Plaintiffs' customers and revenues to Defendants

17  and for their benefit."  FAC ¶ 84.  Defendants argue only, "for the reasons set forth above, there

18  is no evidence to support these facts."  Boredata Mot. at 12.  Because there is a genuine dispute as

19  to whether defendant engaged in "unlawful" practices in departing Welenco and starting

20  Boredata, as set forth in claims eight and nine below, the court finds triable issues precluding

21  summary judgment on this claim.

22          7.   Eighth Claim: Misappropriation of Trade Secrets

23          Plaintiffs allege Craig Corbell misappropriated trade secrets as defined by the

24  California Uniform Trade Secrets Act, California Civil Code § 3426.1, *et seq*, including

25  "Welenco proprietary files and documents, including reams of proprietary CAD drawings

26  showing design and specification details of Welenco's geo-logging vans, and proprietary well

27  swages built by Welenco, Welenco's customer lists, (including contact information and buying

28  patterns), [and] Welenco's revenue history from its geo-logging territories."  FAC ¶ 87.  Plaintiffs

1    contend they can show evidence that Corbell misappropriated trade secrets "by sharing

2    confidential revenue history with others as he formed Boredata, and possessed the confidential

3    information while securing logging parts and equipment."  Opp'n at 8 (citing Guardino Decl.

4    ¶¶ 13, 15).  The court addresses each of these alleged misappropriations separately.

5           California has adopted a version of the Uniform Trade Secret Act ("UTSA"), Cal.

6    Civ. Code § 3426.1 *et seq.,* which defines "misappropriation" of a trade secret as

7           (1) Acquisition of a trade secret of another by a person who knows
             or has reason to know that the trade secret was acquired by
8            improper means; or

9           (2) Disclosure or use of a trade secret of another without express or
             implied consent by a person who:
10

11               (A) Used improper means to acquire knowledge of the trade
                 secret; or

12               (B) At the time of disclosure or use, knew or had reason to
                 know that his or her knowledge of the trade secret was:
13

14                   (i) Derived from or through a person who had
                     utilized improper means to acquire it;

15                   (ii) Acquired under circumstances giving rise to a
                     duty to maintain its secrecy or limit its use; or
16

17                   (iii) Derived from or through a person who owed a
                     duty to the person seeking relief to maintain its
18                   secrecy or limit its use; or

19               (C) Before a material change of his or her position, knew or
                 had reason to know that it was a trade secret and that
20               knowledge of it had been acquired by accident or mistake.

21   Cal. Civ. Code § 3426.1(d).

22          A trade secret is "information, including a formula, pattern, compilation, program,

23   device, method, technique, or process, that: (1) Derives independent economic value, actual or

24   potential, from not being generally known to the public or to other persons who can obtain

25   economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable

26   under the circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1(d).  A customer list

27   may qualify as a trade secret because of its "economic value" when its "disclosure would allow a

28   competitor to direct its sales efforts to those customers who have already shown a willingness to

20

1   use a unique type of service or product as opposed to a list of people who only might be interested

2   and [plaintiff] took reasonable steps to protect this information." *Hanger Prosthetics &*

3   *Orthotics, Inc. v. Capstone Orthopedic, Inc*., 556 F. Supp. 2d 1122, 1135 (E.D. Cal. 2008).

4   Misappropriation can occur when an individual misuses a former employer's protected trade

5   secret client list, for example, "by using the list to solicit clients or to otherwise attain an unfair

6   competitive advantage." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1155 (2004).

7         As to the customer list here, plaintiffs have identified facts showing it had

8   economic value and they made reasonable efforts to maintain its secrecy.  In January 1999, Gary

9   Corbell sent a memorandum to all employees specifying that "all information pertaining to the

10   company's customer list is confidential and disclosure during and after employment with the

11   company is prohibited."  ECF No. 125-3 at 6.  This memorandum was acknowledged and signed

12   by Craig Corbell on January 8, 1999.  *Id.*

13         Also, in his deposition, Guardino testified that having customers' contact

14   information would give someone "a big competitive edge."  Guardino Depo. at 135, ECF No.

15   110-4.

16       Q. What competitive edge does it give somebody?

17 
       A. They know who our customers are. They know who we work
18        for. They could contact them. They don't have to do it through other
        means, such as advertising. There's a lot of important things.

19 
       Q. Do you believe that the names on that customer list are secret,
20        unknown names, Mr. Guardino?

21       A. Some are.

22 
       Q. Can you identify those secret, unknown names that Craig
        Corbell has done work for?

23       A. Well, we don't know who Craig Corbell has done work for.

24 
       Q. But you do believe that some of the customers that are on
25        Exhibit 8 are confidential; is that right?

26       A. It -- not -- what I'm stating --

27       Q. Go ahead.

28   */////*

> A. What I'm stating is, these are important numbers to us and it gives him an advantage. If he is in possession of our customer list, it gives him a business advantage.

*Id*. at 136.

> Q. Do you think the names of your customers on Exhibit 8 are unknown or not capable of being readily found out?
>
> A. Many of them, yes.

*Id*. at 139.

In his sworn declaration, Guardino states that plaintiffs' revenue began to decrease upon the defendants' formation of Boredata, and that Craig Corbell was performing logging jobs in Southern California in competition with plaintiffs immediately after he left Welenco. Guardino Decl. ¶ 12. Guardino also testified in his deposition that "at least 90 percent of [Boredata's customers], if not 100 percent, were Welenco's customers. This is a very limited business. There's *[sic]* only a few people that do it." Guardino Depo. at 139. These facts would allow a factfinder to conclude that Corbell used the client list to identify clients. Summary judgment is DENIED to the extent the claim is premised on the customer list.

As to the revenue information, the citations in the declaration do not support any inference that the Corbells used or shared confidential revenue information. Summary judgment is GRANTED as it pertains to "revenue history."

As to the drawings, defendants argue they do not qualify as trade secrets because Guardino was unable to identify any secret information contained in the drawings, there is no evidence the drawings were confidential, and there is no evidence defendants used the drawings in creating Boredata. Boredata MSJ at 15. Craig Corbell specifically testified he "made no use of any Welenco or Water Well Technology drawings." ECF No. 110-9 ¶ 15.

Plaintiffs provide no evidence showing they made any effort to maintain the secrecy of the drawings. Scott Mauer, the author of several of the drawings at issue, states in a sworn declaration that it was never communicated to him that his drawings were confidential or considered trade secrets. Mauer Decl. at 2, ECF No. 110-10. Plaintiffs do not identify any particular drawings as trade secrets, or say which drawings were used by Craig Corbell in his

22

1   company.  To the extent the trade secrets claim is premised on the drawings, the court finds there

2   is no triable issue regarding their qualification as trade secrets and summary judgment is

3   GRANTED.  *See MAI Sys. Corp. v. Peak Computer, Inc*., 991 F.2d 511, 522 (9th Cir. 1993)

4   (reversing summary judgment where "no declaration or deposition testimony which specifically

5   identifies any trade secrets"; because "trade secrets are not specifically identified, we cannot

6   determine whether [defendant] has misappropriated any trade secrets").

7                  8.   Ninth Claim: Breach of Employment Agreement

8                  Plaintiffs allege Craig Corbell's employment agreement required that Corbell

9   maintain the confidentiality of Welenco's "Confidential Information," and refrain from soliciting

10  Welenco's employees or disrupting employee relationships; plaintiffs say he breached that duty.

11  FAC ¶ 96.  Craig Corbell argues he did not breach any employment agreement because the

12  agreement expired on May 4, 2007 "unless notice of election not to terminate was given before

13  January 31, 2010," and he gave no such notice.  SUF 75.

14                  The Employment Agreement between Welenco and Corbell provides:

15                  This Agreement shall commence on May 4, 2007, and expire on
                    May 3, 2010. On or before January 31, 2010, either party must give
16                  the other party written notice of its election not to terminate this
                    Agreement. Thereafter, if neither party has exercised its right to
17                  terminate this Agreement, the term hereof shall automatically renew
                    for successive one (1) year periods, unless otherwise terminated at
18                  least thirty (30) days prior to the expiration of any term of this
                    Agreement.
19

20  ECF No. 2-3 ¶ 5.1.

21                  The Agreement also provides that all books and records shall be immediately

22  returned to employer upon termination of the agreement, and that Corbell "shall not engage in

23  any other business duties or pursuits whatsoever . . . without the written consent of Employer," or

24  solicit employees to leave the company.  *Id.* ¶¶ 2.4.1, 6.1.[6]

25                  Plaintiffs have established a triable issue as to whether Craig Corbell violated the

26  agreement by working to create a competing venture in the course of his employment and

27  _____

28  [6] The motion does not challenge the enforceability of the Agreement, and so the court does not
    reach that question.

                                                    23

retaining business records after termination.  In an email dated May 20, 2010, the Corbells

discuss the employment agreement and proposing an amendment, "[s]o long as we don't lock me

in with another no-compete like the employment agreement did."  ECF No. 126-3 at 58.  In

another email dated June 9, 2010, Craig and Gary Corbell discussed extending the Agreement one

to two years, referring to an email sent from Guardino to Craig Corbell about extending the

employment agreement "as it was."  ECF No. 125-3 at 32.  Gary tells Craig by e-mail this would

extend the non-compete, and advises him to "let it ride," and not give Guardino a yes or no so that

only Welenco would be bound.  *Id*.  In response, Craig Corbell states that while he did not sign,

"if push comes to shove I think the court might side with [Guardino] in that 1. I did in fact stay

on, and 2. Accepted the bonus which signals my understanding of the agreement."  ECF No. 125-

3 at 90.

On October 26, 2012, the record reflects Guardino sent Craig Corbell an email

noting the employment agreement is still in effect.  ECF No. 125-3 at 66.  Corbell responded

shortly thereafter saying he was attaching a notice he says he sent on August 19, 2011, notifying

Guardino of his intent to terminate the agreement.  The attachment is not included in the exhibits

before the court.

Based on this record, a reasonable factfinder could find the existence of a valid

employment agreement that both parties understood to be valid, and Craig Corbell's breach of

that agreement.

Summary judgment is DENIED.

B. Gary Corbell's Motion

As a preliminary matter, plaintiffs in their opposition concede summary judgment

on the fourth, fifth, and sixth claims.  Opp'n at 5.  The court accordingly grants summary

judgment on these claims, and turns to the remaining four claims (claims one, three, seven, eight)

against Gary Corbell.

/////

/////

/////

1          1.  First Claim: Violation of Computer Fraud and Abuse Act (CFAA)

2          Plaintiffs allege Gary Corbell conspired to obtain unauthorized access to a

3   computer used in interstate commerce. FAC ¶ 52.  Corbell argues that discovery has produced no

4   facts supporting this allegation, justifying summary judgment.  Corbell Mot. at 6, ECF No. 109-1.

5          Plaintiffs bring their claim against Gary Corbell under 18 U.S.C. § 1030(b), which

6   imposes liability for any person who "conspires to commit or attempts to commit an offense

7   under subsection (a)," the underlying statute on which plaintiffs base their claim against Craig

8   Corbell.  They argue that "Greg [sic] Corbell acted in concert and agreement with Craig Corbell

9   to misappropriate Welenco trade secrets and start a competing well logging business," and they

10  "conspired to thwart [p]laintiff's access to the company laptop."  Opp'n at 4, ECF No. 126.

11         A claim under section (b) requires evidence of an agreement and common

12  activities in furtherance of the unlawful act.  *NetApp, Inc. v. Nimble Storage, Inc*., No.

13  513CV05058, 2014 WL 1903639 (N.D. Cal. May 12, 2014) (citing *Trademotion, LLC v.*

14  *Marketcliq, Inc*., 857 F. Supp. 2d 1285, 1294 (M.D. Fla. 2012) (recommending dismissal of

15  § 1030(b) claim due to lack of facts showing "a knowing agreement with another to commit the

16  unlawful act"); *Vacation Club Servs., Inc. v. Rodriguez,* No. 6:10–cv–247, 2010 WL 1645129, at

17  *1–2, 2010 U.S. Dist. LEXIS 39572, at *5–6 (M.D. Fla. Apr. 22, 2010) (same).  Without a

18  showing of any attempts to violate the statute, there is no triable issue of a conspiracy to do so.

19         As set forth above, a claim under subsection (a) requires more than just a showing

20  that a defendant misused files to which he had access as an employee.  Even if the Corbells

21  discussed acquiring Welenco's information, the acquisition of that information did not violate the

22  statute because there is no evidence Craig exceeded or attempted to exceed his authorized access.

23  Therefore any "conspiracy" to acquire information that Craig Corbell had access to is not

24  actionable.  Likewise, plaintiffs' argument that Gary Corbell conspired to thwart access to the

25  laptop is unavailing; Craig wrote to Gary, "I think I will wait a bit before I give it [the password]

26  to him."  ECF No. 125-3 at 12.   There is nothing in the record showing a response from Gary, let

27  alone an attempt to conspire, and the record shows Craig emailed the password back to Welenco

28  two hours later.  *Id*.

1          This claim fails because a reasonable factfinder could not find Gary Corbell

2    conspired with Craig Corbell to violate the statute.  Summary judgment is GRANTED.

3          2.   Third Claim: Copyright Infringement

4          As discussed above, plaintiffs allege defendants have made unauthorized copies of

5    plaintiffs' copyrighted design plans and technical CAD drawings and/or distributed such copies,

6    without plaintiffs' authorization or consent, and have used such unauthorized reproductions in

7    commerce to design and equip geo-logging vans to unfairly compete against plaintiffs.  FAC

8    ¶ 64.  Gary Corbell argues that because his involvement in the alleged use of copyrighted

9    materials is limited to a financial loan, he "could not have wrongfully used or distributed any

10   copyrighted material."  Corbell Mot. at 6.

11         In their opposition, plaintiffs do not identify on what basis they claim Gary Corbell

12   infringed, but argue he "sought to instruct Craig Corbell on downloading confidential logging

13   files."  Opp'n at 5.  The court construes this as a claim of copyright infringement under a theory

14   of vicarious infringement.  "To state a claim for vicarious copyright infringement, a plaintiff must

15   allege that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a

16   direct financial interest in the infringing activity."  *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494

17   F.3d 788, 802 (9th Cir. 2007).  Plaintiffs do not allege that Gary Corbell had any supervisory

18   authority over Craig Corbell, so infringement may not be found on this theory.  However, "one

19   who, with knowledge of the infringing activity, induces, causes or materially contributes to the

20   infringing conduct of another, may be held liable as a 'contributory' infringer.'"  *A&M Records,*

21   *Inc. v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001), *as amended* (Apr. 3, 2001), *aff'd sub*

22   *nom. A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002) (citation omitted); *see*

23   *also Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996).  "Put differently,

24   liability exists if the defendant engages in 'personal conduct that encourages or assists the

25   infringement.'"  *Id*. (quoting *Matthew Bender & Co. v. West Publ'g Co*., 158 F.3d 693, 706 (2d

26   Cir. 1998)).  The Ninth Circuit interprets the knowledge requirement for contributory copyright

27   infringement to include both those with actual knowledge and those who have reason to know of

28   direct infringement.  *See Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).  To support a

1   claim of secondary liability, plaintiffs must produce evidence of "culpable intent" and an "illegal

2   objective." *See MGM v. Grokster*, 545 U.S. 913, 934–35, 939–41 (2005); *see also Perfect 10,*

3   *Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1171 (9th Cir. 2007).

4           Here, even if plaintiffs could establish copyright ownership and damages in the

5   first instance, they have not pointed to any facts to show that defendant Gary Corbell acted with

6   the "object of promoting" infringement of plaintiffs' copyright.  Nor have plaintiffs shown a

7   "clear expression," "other affirmative steps," or "specific acts" taken by defendant Gary Corbell

8   that actively encouraged or induced infringement.  *Luvdarts LLC v. AT & T Mobility, LLC*, No.

9   CV 10-05442, 2011 WL 997199, at *2 (C.D. Cal. Mar. 17, 2011), *aff'd*, 710 F.3d 1068 (9th Cir.

10   2013).  Plaintiffs also have not pointed to facts showing defendant had any knowledge of the

11   alleged copyright-protected drawings contained in the files.

12           Summary judgment is GRANTED as to this claim.

13           3.   Seventh Claim: Unfair Business Practices

14           Plaintiffs allege defendants engaged in unfair competition as defined by California

15   Business and Professions Code § 17200, *et seq*. (the Unfair Competition Law, or UCL), by

16   engaging in unfair and unlawful and deceptive business practices, "including commercial

17   impersonation of Welenco as alleged above, conversion of [p]laintiffs' property and trespass upon

18   [p]laintiffs' computer systems in violation of Penal Code section 502, for the purpose of harming

19   [p]laintiffs' business and causing competitive injury to [p]laintiffs by diverting [p]laintiffs'

20   customers and revenues to Defendants

21   and for their benefit."  FAC ¶ 84.

22           Corbell argues there are no facts establishing he has engaged in any unfair

23   business practices in violation of the UCL.  Corbell Mot. at 7; SUF 17.  Plaintiffs point to the

24   Guardino declaration as evidence Corbell was an "active participant, advisor, and financer of the

25   unlawful actions of Craig Corbell."  Opp'n at 5.

26           To state a claim for an "unlawful" business practice under the UCL, a plaintiff

27   must assert the violation of some other law.  *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular*

28   *Telephone Co*., 20 Cal. 4th 163, 180 (1999) ("By proscribing 'any unlawful' business practice,

1   section 17200 'borrows' violations of other law and treats them as unlawful practices that the

2   unfair competition law makes independently actionable.") (citation omitted).  Where a plaintiff

3   cannot state a claim under the "borrowed" law, he cannot state a UCL claim.  *See, e.g., Smith v.*

4   *State Farm Mutual Automobile Ins. C*o., 93 Cal. App. 4th 700, 718 (2001).

5          No violation of any borrowed law justifies the application of this statute to Gary

6   Corbell, as reflected in the discussion of the other claims covered by the instant motion.

7   Summary judgment is GRANTED as to this claim.

8                  4.   Eighth Claim: Misappropriation of Trade Secrets

9          The trade secret misappropriation allegations against Gary Corbell are identical to

10  those against Craig Corbell discussed above.  Plaintiffs argue "each defendant disclosed or used a

11  trade secret of Welenco knowing that improper means were used to acquire knowledge of the

12  trade secret, or, at the time of disclosure or use, they knew or had reason to know their knowledge

13  of the trade secret was: (i) derived from or through a person who had utilized improper means to

14  acquire it; (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit

15  its use; or (iii) derived from or through a person who owed a duty to Welenco to maintain its

16  secrecy or limit its use.

17         Gary Corbell argues plaintiffs have not shown any facts demonstrating he

18  misappropriated, used, or distributed the alleged trade secret documents, namely the customer list

19  and CAD drawings.  Plaintiffs point to Guardino's declaration, saying they have produced

20  evidence that defendant acted in concert with Craig Corbell to take Welenco files.  *See* Guardino

21  Decl. ¶¶ 5-8.

22         There is no evidence showing Gary Corbell acquired, disclosed, used, or derived

23  the alleged trade secrets here.  Guardino's declaration is insufficient to defeat summary judgment,

24  given that Guardino has no personal knowledge of Gary and Craig Corbell's discussion regarding

25  Welenco files; Guardino's own statements do not create a triable issue.

26         Summary judgment is GRANTED as to this claim.

27  /////

28  /////

VI.    <u>CONCLUSION</u>

The motion for summary judgment by Craig Corbell/Boredata (ECF No. 110) is GRANTED as to claims one, two, three, four, and five, in part as to claim eight, and DENIED in all other respects.  The motion for summary judgment by Gary Corbell (ECF No. 109) is GRANTED in its entirety.  The request to seal is DENIED; plaintiffs are directed to file the documents (with redacted versions of WEL 1421, WEL 1426, and WEL 1428) from Jarom Phipps' declaration, ECF Nos. 125-3 & 126-3, omitting any personal information of third parties.

IT IS SO ORDERED.

DATED: August 25, 2015.

_____
UNITED STATES DISTRICT JUDGE